998 F.2d 1010
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty A. SHERMAN; Peter G. Sherman; Robert A. Sherman,
Plaintiffs-Appellants,
v.
Fred A. HICKS; Robert B. Tucker, Jr.; Tucker, Hicks, Hodge
& Cranford, P.A.; Frank L. Schrimsher, as
Executor of the Estate of Peter G.
Sherman, Defendants-Appellees,
and
CHEMIMETALS PROCESSING, INCORPORATED, Defendant.
 No. 92-1403.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 4, 1993.
Decided: July 13, 1993.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CA-90-327, CA-91-46)
 Paul Everett Tinkler, Wallace & Tinkler, Charleston, South Carolina, for Appellants.
 Richard C. Carmichael, Jr., Charlotte, North Carolina; Harvey L. Cosper, Jr., Charlotte, North Carolina, for Appellees.
 Marion G. Follin, III, Smith, Follin & James, Greensboro, North Carolina, for Appellants.
 J. J. Wade, Jr., Charlotte, North Carolina; John A. Mraz, Asheville, North Carolina, for Appellees.
 W.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before WILKINS and LUTTIG, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.
 WILKINS, Circuit Judge:
 
 OPINION
 
 1
 Appellant Betty A. Sherman brought this diversity suit against Appellees Fred A. Hicks, Robert B. Tucker, Jr., Tucker, Hicks, Hodge and Cranford, P.A., and Frank L. Schrimsher as Executor of the Estate of Peter G. Sherman. Mrs. Sherman claims that attorneys Hicks and Tucker assisted her now deceased ex-husband Peter G. Sherman (Sherman) in defrauding her during the Shermans' divorce proceedings by failing to disclose fully Sherman's assets. The Sherman sons, Appellants Peter G. Sherman and Robert A. Sherman, also filed suit against the attorneys and the estate. They allege that Hicks and Tucker breached fiduciary duties towards them, and they seek a declaration that they are beneficial owners of stock owned by a trust known as the Casstevens Trust. After the actions were consolidated for adjudication, the district court granted summary judgment in favor of Hicks, Tucker, and their law firm.[1] We affirm in part, reverse in part and remand for further proceedings.
 
 I.
 
 2
 In August 1982, the Shermans separated after Sherman informed Mrs. Sherman that he wanted a divorce. Thus began lengthy and acrimonious state legal proceedings. Attorneys Hicks and Tucker represented Sherman in this domestic litigation.
 
 
 3
 Sherman was the sole shareholder of Vibra-Chem Corporation, a business that finished tools and other metal implements with a vibratory process aided by chemicals. Vibra-Chem purchased a chemical compound known as FM4 from REM Chemical Company. Sherman discovered that improved results could be obtained by using FM4 in a finishing process in which this chemical compound was recirculated through a tumbler. Sherman's first two installations of this process were in February and March 1983.
 
 
 4
 In 1984, Sherman experienced problems obtaining FM4 from REM and began to investigate the possibility of producing FM4 himself. Sherman contacted patent attorney Daniel E. McConnell. In October 1984, McConnell informed Sherman that FM4, and the finishing process with which Sherman was using it, were in the public domain and that the manufacture and sale of the chemical compound, or instruction of others in the use of the recirculation process, should not result in the successful assertion of a patent infringement claim against him. In December 1984, Tucker contacted McConnell on Sherman's behalf, this time to explore the possibility of obtaining a patent on an improved chemical accelerator product.
 
 
 5
 Hicks and Tucker advised Sherman to create a new corporate entity capitalized with non-marital funds in which to operate the new business venture to manufacture a replacement chemical for FM4. They advised Sherman that this was necessary to insulate it from equitable distribution claims. Sherman approached Hicks and Tucker with the opportunity to invest in the new business, and they agreed that Sherman would own 80 percent of the new venture, while the attorneys would each own 10 percent.
 
 
 6
 After an independent attorney, Nelson M. Casstevens, Jr., reviewed the business arrangement on Sherman's behalf, the new corporation, ChemiMetals Processing, Incorporated, was formed on October 16, 1984. Hicks and Tucker purchased $200 of ChemiMetals stock in the names of their respective wives and loaned ChemiMetals $9,000 to begin operation. Upon the advice of Hicks and Tucker, Sherman created an irrevocable trust to own his 80 percent interest in ChemiMetals; Casstevens was appointed trustee, and the trust came to be known as the Casstevens Trust. Hicks and Tucker made a gift of $800 to the Casstevens Trust so that it could purchase an 80 percent interest in ChemiMetals for Sherman's benefit.
 
 
 7
 Sherman was the sole beneficiary of the Casstevens Trust during his life, but following his death, his two sons were to become beneficiaries. The Casstevens Trust did not authorize Sherman to terminate the Trust directly, and all distributions from the Trust were discretionary with the trustee. However, Sherman reserved the right to replace the trustee, first with Hicks and then with Tucker. Article 4.15 of the Trust provided:
 
 
 8
 Limited Rights. Notwithstanding the fact that individuals or entities other than the Grantor could or might become beneficiaries hereof under the above provisions of this Trust Agreement, prior to the death of the Grantor none of them shall be considered to have any right, title and/or interest hereunder of any kind, nor shall any beneficiaries have any claims as to the conduct of the Trustee or Grantor. A nonexclusive example of the intent of this provision is that prior to the Grantor's death, only the Grantor shall have any right to assert any claim based on the conduct of the Trustee prior to the Grantor's death. For another example, the Trustee shall have the absolute right to terminate this Trust Agreement and distribute the entire then existing trust estate to the Grantor under the provisions of Article 4.16, and no resulting right or claim shall arise on the part of any actual or possible beneficiary other than the Grantor.
 
 
 9
 In December 1984, with Hicks' assistance, Sherman prepared and filed an equitable distribution affidavit with the state court in which the domestic litigation was pending. The preparation of this affidavit was governed by rules adopted pursuant to an order of a state court judge. Rule 11A (Equitable Distribution Rules) required the exchange of equitable distribution affidavits on forms identical to those specified. Part I of the affidavit required the affiant to list all marital property, and Part II of the affidavit required the affiant to list all separate property. The instructions for preparing Part II stated: "List All Real or Personal Property Which Is Your Separate Property. This Means Property Owned By You Which Is Not Marital Property And Was Not Listed In Part I Of This Affidavit." Sherman did not list ownership of stock in ChemiMetals or his beneficial interest in the Casstevens Trust. When asked by Mrs. Sherman's attorney during a pretrial deposition whether he owned any stock other than Vibra-Chem, Sherman responded that he did not.
 
 
 10
 In May 1985, the Shermans settled their domestic litigation. Mrs. Sherman agreed to give up her alimony, child support, and equitable distribution claims in return for cash and other property with a value of approximately $550,000, or roughly one-half of the marital estate. The settlement agreement contained a comprehensive release of liabilities, including a provision under which Mrs. Sherman agreed to release Sherman's legal representatives from any liability.
 
 
 11
 In November 1985, Sherman, Hicks, and Tucker first discussed termination of the Casstevens Trust during a routine meeting. Sherman indicated that he would like to have the ChemiMetals stock placed in his name, and documents substituting Hicks as trustee and terminating the Trust were prepared. However, Sherman left the office without signing the document to substitute Hicks as trustee. Although the document was then mailed to Sherman, he failed to return it.
 
 
 12
 On November 24, 1986, Sherman applied for patents on two improved chemical accelerator products and the process by which they were used. In a deposition filed with the district court for consideration in determining the motion for summary judgment, an expert offered uncontradicted testimony that Sherman "invented" the improved chemical accelerator products in November 1986, when the products with which Sherman was experimenting became refined to the point that he had established the parameters within which various combinations of chemicals rendered the desired result. Only at this time, opined the expert, did the idea for the new chemical products have any marketable value. Patents were issued to Sherman in February 1988.
 
 
 13
 In early May 1987, Sherman advised Hicks that he wanted to revise his will to provide for a new beneficiary, his homosexual lover, Paul W. Keener. Hicks prepared a new will at Sherman's direction, and Sherman executed it on May 6, 1987. The residuary clause of the will makes specific reference to Sherman's ownership interest in ChemiMetals, providing in pertinent part:
 
 
 14
 Residue. The residue of my estate shall be divided into equal shares. All of my ownership interest (stock or otherwise) in ChemiMetals Processing, Inc., a North Carolina close corporation, or its successor or successors, shall be divided equally between these two shares. One share, to be called the FAMILY SHARE, shall be held as my FAMILY TRUST provided in Article 2.5 below. The other share, to be called the PAUL WITHERS KEENER SHARE, shall be held as the PAUL WITHERS KEENER TRUST as provided in Article 2.6 below.
 
 
 15
 When Sherman executed the will, Hicks reminded him that the Casstevens Trust had not been terminated and that the sole contingent beneficiaries under the Trust were his sons. In order to effectuate the disposition of ChemiMetals stock under his new will, Hicks advised, Sherman would have to sign the document necessary to substitute Hicks as trustee that had been sent to him in November 1985. Sherman responded that he had the document and that he would return it. The record does not indicate that Hicks or Tucker were aware that Sherman might be ill at this time.
 
 
 16
 During the following weeks, Sherman failed to return the document necessary to substitute Hicks as trustee of the Casstevens Trust. On the morning of May 28, 1987, a hospital employee telephoned Hicks and explained that Sherman had asked her to inform Hicks that Sherman had been hospitalized and that Hicks "would know what to do." Hicks then questioned Tucker about whether all of the documents to effectuate Sherman's new will had been executed. Upon reviewing Sherman's estate file, Tucker discovered that the Casstevens Trust had not been terminated. A document substituting Hicks as trustee of the Casstevens Trust was prepared for Sherman's signature. In addition, Tucker, acting pursuant to Sherman's durable power of attorney, executed a document substituting Hicks as the trustee of the Casstevens Trust.
 
 
 17
 It is undisputed that at approximately 6:00 that evening, Sherman received a large dose of morphine. Ten minutes later Hicks, Tucker, and a paralegal from their law firm arrived at the hospital. As Tucker and the paralegal watched through the glass enclosure of Sherman's room, Hicks spoke with Sherman. Sherman then signed the document substituting Hicks as trustee, holding his signature up so that the paralegal could verify it. The next day, acting as successor trustee, Hicks issued a new stock certificate for 800 shares of ChemiMetals stock to Sherman in his individual capacity.
 
 
 18
 Sherman died the following week of AIDS, and the 800 shares of ChemiMetals stock became an asset of his estate. As provided in Sherman's will, Hicks became the executor. Tucker became the attorney for the estate. Subsequently, an associate in the attorneys' law firm reviewed the ChemiMetals Shareholders' Agreement and reported that a provision of the agreement addressing the death of a shareholder called for the corporation to redeem the shares held by the estate at book value.[2] This provision created a potential conflict of interest for Hicks and Tucker because redemption of the stock by the corporation could produce a windfall to their wives, who would be left as sole shareholders of ChemiMetals stock that was likely worth significantly more than book value.
 
 
 19
 Hicks consulted outside counsel and decided to withdraw as executor. Prior to withdrawing, however, Hicks caused ChemiMetals to redeem the stock held by the estate for book value. Valuing ChemiMetals stock at book value avoided estate tax that might otherwise have been due had the value of the stock been assessed at a greater value. Contemporaneously with the redemption, Hicks, as executor of the estate, and Mrs. Tucker and Mrs. Hicks, as the remaining shareholders of ChemiMetals, entered into an agreement under which the estate, at its discretion, could repurchase the stock for the same price. Some time later, the estate did, in fact, repurchase the stock pursuant to this agreement.
 
 
 20
 Mrs. Sherman learned of the existence of ChemiMetals and the Casstevens Trust during the estate administration and filed this action. Although her complaint is framed in terms of six causes of action, the gist of her complaint is that she was defrauded during the pendency of the divorce litigation because neither Sherman nor his attorneys disclosed the existence of ChemiMetals, the Casstevens Trust, or Sherman's work on developing the improved chemical accelerator products that were eventually patented. The Sherman sons also filed suit, claiming that they are the beneficial owners of the 800 shares of ChemiMetals stock under the Casstevens Trust because Hicks obtained his substitution as trustee through undue influence. They request that the distribution of the ChemiMetals stock from, and termination of, the Casstevens Trust be set aside. In addition, they allege that Hicks and Tucker breached fiduciary duties owed to them as beneficiaries of the Casstevens Trust and the estate.
 
 
 21
 After conducting discovery, Hicks, Tucker, and their law firm moved for summary judgment. The district court granted their motion, reasoning that Mrs. Sherman had failed to produce sufficient evidence of fraud to raise a genuine issue of material fact and that Hicks, Tucker, and their law firm were entitled to judgment as a matter of law.[3] The district court ruled that Article 4.15 of the Casstevens Trust agreement, providing that contingent beneficiaries would realize no rights under the Trust until Sherman's death, foreclosed the Sherman sons' claim under the Trust. The district court also concluded that summary judgment was proper as to the Sherman sons' breach of fiduciary duty claims because language in the Casstevens Trust permitted Hicks to distribute the Trust estate to Sherman and terminate the Trust prior to his death without liability to any actual or possible beneficiary other than Sherman.[4] Mrs. Sherman and the Sherman sons appeal, arguing that the reasonable inferences from the evidence they presented in support of their opposition to the motion for summary judgment are sufficient to raise genuine issues of material fact, thereby foreclosing summary judgment.
 
 II.
 
 22
 Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Federal Rule of Civil Procedure 56(c) requires that the court enter judgment against a party who "after adequate time for discovery ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecasted evidence, Ross, 759 F.2d at 364, but it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). The essence of the inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment is proper "if the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." Id. at 248. We review de novo the decision of the district court to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).
 
 III.
 
 23
 Mrs. Sherman asserts that Hicks and Tucker defrauded her during the domestic litigation by failing to disclose fully Sherman's assets. She claims that Sherman's equitable distribution affidavit should have listed inchoate intellectual property rights in the improved chemical accelerator products, ChemiMetals stock, or Sherman's beneficial interest in the Casstevens Trust as marital property. Alternatively, Mrs. Sherman maintains that these assets should have been disclosed on that portion of the equitable distribution affidavit requiring the listing of separate property. Mrs. Sherman also claims that Sherman's statement in deposition that he owned no other stock than VibraChem was false because the Casstevens Trust was a sham.
 
 
 24
 Under North Carolina law, in order to prevail on her fraud claim, Mrs. Sherman must show: " '(1) [F]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " C.F.R. Foods, Inc. v. Randolph Dev. Co., 421 S.E.2d 386, 388-89 (N.C. Ct. App.) (alteration in original) (quoting Terry v. Terry, 273 S.E.2d 674, 677 (N.C. 1981)), disc. rev. denied, 424 S.E.2d 906 (N.C. 1992). To prevail on a claim of fraud based on concealment of a material fact, Mrs. Sherman must also prove that the defendant had a duty to disclose the information. See Harton v. Harton, 344 S.E.2d 117, 119 (N.C. Ct. App.), disc. rev. denied, 347 S.E.2d 41 (N.C. 1986).[5]
 
 
 25
 Under North Carolina law, "[a] duty to disclose arises in three situations." Id. Such a duty may exist when"a fiduciary relationship exists between the parties to the transaction." Id. Additionally, a duty to disclose may "arise outside of a fiduciary relationship, when the parties are negotiating at arm's length." Id. A duty to disclose in the context of arm's length negotiations arises "when a party has taken affirmative steps to conceal material facts from the other" or when "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." Id.
 
 
 26
 Clearly, Hicks and Tucker, as attorneys representing her husband in the divorce litigation, never occupied a fiduciary relationship with respect to Mrs. Sherman. Moreover, Hicks and Tucker were not parties engaged in arm's length negotiations with Mrs. Sherman, so the remaining two situations in which a duty of disclosure arise are[6] inapplicable. Thus, while the facts viewed in the light most favorable to Mrs. Sherman may have implicated ethical considerations that are not before this court, they do not provide an adequate basis for private litigation. Indeed, even if Sherman should have disclosed the assets about which Mrs. Sherman complains,[7] his attorneys had no independent legal duty to disclose any fraudulent omission made by their client. See also Petrou v. Hale, 260 S.E.2d 130, 135 (N.C. Ct. App. 1979) (ruling that attorneys have no duty to protect the rights of opposing litigants), disc. rev. denied, 265 S.E.2d 397 (N.C. 1980); cf. Schatz v. Rosenberg, 943 F.2d 485, 492-93 (4th Cir. 1991) (holding that under Maryland common law attorneys have no duty to disclose fraudulent misrepresentations made by their clients to non-client third parties), cert. denied, 112 S. Ct. 1475 (1992). Therefore, Hicks and Tucker were entitled to summary judgment as a matter of law on Mrs. Sherman's fraud claim.
 
 IV.
 
 27
 The Sherman sons' complaint first sought a declaration that they are the beneficial owners of 800 shares of ChemiMetals stock under the Casstevens Trust. They maintain that Hicks' termination of the Casstevens Trust should be declared null and void because Hicks exercised undue influence over Sherman, causing him to substitute Hicks as trustee.[8] "Undue influence is defined as 'the exercise of an improper influence over the mind and will of another to such an extent that his professed act is not that of a free agent, but in reality is the act of the third person who procured the result.' " Hayes v. Turner, 391 S.E.2d 513, 516 (N.C. Ct. App. 1990) (quoting Lee v. Ledbetter, 49 S.E.2d 634, 636 (N.C. 1948)). Determining whether undue influence occurred requires an examination of all the facts and circumstances. Id. Evidence that the one over whom undue influence was allegedly exercised intended property to go to another, or was in ill health or a weakened mental state, may be probative. Id. An individual's "weakness of mind, whether natural or induced by the excessive use of drugs ..., when accompanied by such circumstances as tend to show what advantage was taken of it," may lead a jury to infer undue influence. Id.
 
 
 28
 The Sherman sons have undoubtedly raised a genuine issue of material fact concerning Sherman's weakened mental state when he executed the document substituting Hicks as trustee of the Casstevens Trust, paving the way for Hicks to distribute the ChemiMetals stock and terminate the Trust. The deposition of Dr. Paul O'Bar concerning the effects of the dosage of morphine Sherman received is more than adequate to raise the inference that Sherman's faculties were impaired when he executed the document.
 
 
 29
 In addition, the Sherman sons emphasize that the potential financial benefit to Hicks' wife may have motivated Hicks to act improperly. Without commenting on how this issue ultimately may be resolved, we believe that viewed in the light most favorable to the Sherman sons, the potential financial benefit to Hicks' wife raises a genuine issue of material fact concerning Hicks' motivation.
 
 
 30
 The sons also maintain that the fact that their father failed to execute the document substituting Hicks as trustee for three weeks following his visit to his attorneys' office in early May indicates that Sherman did not intend the ChemiMetals stock to pass under his will. While there is abundant evidence that Sherman intended to benefit Keener with the ChemiMetals stock, we conclude that Sherman's failure to return the necessary document for a period of three weeks is sufficient to raise a genuine issue of material fact concerning whether Sherman intended to benefit Keener with the ChemiMetals stock when he executed the document substituting Hicks as trustee.
 
 
 31
 Viewing Sherman's impaired mental faculties when he executed the document, Hicks' potential for significant financial gain, and Sherman's three-week delay in returning the document substituting Hicks as trustee in the light most favorable to the Sherman sons-as we must in deciding the appropriateness of summary judgment-we find that a genuine issue of material fact has been raised concerning whether Sherman was acting under Hicks' influence to such an extent that Sherman's substitution of Hicks as trustee of the Casstevens Trust was not Sherman's own. Consequently, we hold that summary judgment on this issue was improperly granted by the district court.[9]
 
 
 32
 The Sherman sons next claim that in distributing the ChemiMetals stock to Sherman, Hicks violated his fiduciary duty as trustee of the Casstevens Trust. It is undisputed that when Hicks distributed the ChemiMetals stock to Sherman from the Casstevens Trust, Hicks' wife could significantly benefit from redemption of the stock by ChemiMetals at book value following Sherman's death. Viewed in the light most favorable to the Sherman sons, we conclude that the potential benefit to Hicks from the distribution of the ChemiMetals stock is sufficient to create the inference that Hicks may have acted from an improper motive in distributing the ChemiMetals stock to Sherman. See Restatement (Second) of Trusts § 187 cmt. g (1959). Thus, we conclude that summary judgment as to this claim was improper.
 
 
 33
 The Sherman sons next contend that the district court erred in failing to address their claim that Hicks and Tucker breached fiduciary duties owed to them in their handling of Sherman's estate. We agree that the district court failed to discuss this claim. However, the Sherman sons do not assert why summary judgment on this claim was improper. Indeed, the Sherman sons have failed to present any evidence tending to show that Hicks or Tucker mishandled the estate. Nor have the Sherman sons shown how they have been damaged by the attorneys' failure to disclose the potential conflict of interest. Accordingly, we find that summary judgment as to this claim was proper.
 
 
 34
 In sum, we conclude that the district court properly granted summary judgment in favor of Hicks, Tucker, and Tucker, Hicks, Hodge, and Cranford, P.A. on Mrs. Sherman's claims against them and on the Sherman sons' claim asserting breach of fiduciary duty in the handling of the estate. However, we conclude that genuine issues of material fact exist concerning whether Hicks wrongfully obtained his substitution as trustee of the Casstevens Trust and distributed the ChemiMetals stock to Sherman. Finally, we affirm the dismissal by the district court of the Shermans' suits against the estate.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 Following entry of summary judgment in favor of Hicks, Tucker, and their law firm, the only pending portions of the actions were the claims against the estate. Although the district court earlier had denied without prejudice a motion to dismiss the suits against the estate under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(6), after granting summary judgment in favor of the remaining defendants, the district court reconsidered its earlier ruling sua sponte and granted the motion of the estate to dismiss. Although Mrs. Sherman and the Sherman sons have appealed from this ruling, they have failed to advance any reason why a dismissal as to the estate was improper. We, therefore, affirm the dismissal of the actions against the estate
 
 
 [2]
 Mrs. Tucker, Mrs. Hicks, and Casstevens on behalf of the Trust executed the Shareholders' Agreement when ChemiMetals was formed in October 1984. Hicks and Tucker maintain that they had forgotten that the agreement contained the buy/sell provision
 
 
 [3]
 Mrs. Sherman's complaint purported to state causes of action under N.C. Gen. Stat. § 84-13 (Michie 1985) (providing for doubling of verdict against attorney for fraudulent practices), civil conspiracy, and constructive trust. The district court held that these issues go to damages or remedy rather than stating substantive causes of action. The court also rejected Mrs. Sherman's negligence claim based on Hicks' and Tucker's failure to disclose on the equitable distribution affidavit, or in Sherman's deposition, the existence of ChemiMetals; it concluded that as a matter of law Hicks and Tucker owed Mrs. Sherman, as an opposing party, no affirmative duty of disclosure. Mrs. Sherman does not challenge these rulings on appeal. The parties agreed that summary judgment was proper as to Mrs. Sherman's sixth cause of action for an accounting and receivership
 
 
 [4]
 The district court disposed of the Sherman sons' claim under N.C. Gen. Stat. § 84-13 and for accounting and receivership in the same manner as described in Footnote 3
 
 
 [5]
 Hicks and Tucker maintain that the settlement agreement into which Mrs. Sherman entered in the domestic litigation, which released Sherman's attorneys from liability, bars her suit. Mrs. Sherman claims that because the settlement agreement was obtained by fraud it is unenforceable. See Harroff v. Harroff, 398 S.E.2d 340, 342 (N.C. Ct. App. 1990), disc. rev. denied, 402 S.E.2d 833 (N.C. 1991). Because we conclude as a matter of law that Mrs. Sherman cannot prevail against Hicks and Tucker on other grounds, we do not address this issue. See Ross, 759 F.2d at 363
 
 
 [6]
 Mrs. Sherman has failed to present evidence sufficient to raise a genuine issue of material fact that Hicks and Tucker conspired with Sherman to injure her. The only evidence presented demonstrates that Hicks and Tucker acted in their capacities as attorneys, advising Sherman on the appropriate course of action from a legal standpoint
 
 
 [7]
 Mrs. Sherman's expert testified at deposition that although ChemiMetals had a negative book value in December 1984, he believed that thevalue of the corporation was in excess of $10,000 as of that date based on Hicks and Tuckers' infusing $10,000 into the company only two months before. Accepting the valuation of this expert, the ChemiMetals stock, therefore, would have had-at best-a minimal impact on the equitable distribution of this marital estate valued at in excess of $1,000,000
 
 
 [8]
 The district court concluded that Article 4.15 of the Casstevens Trust precluded the Sherman sons' prevailing on any claim under the Trust as a matter of law. Although Article 4.15 provided that the Sherman sons had no rights under the Trust prior to Sherman's death, Article 2.5 plainly directed that upon Sherman's death his children became the Trust beneficiaries. Thus, as a matter of law, the Sherman sons were contingent beneficiaries under the Trust, see Wachovia Bank & Trust Co. v. Sevier, 255 S.E.2d 636, 639 (N.C. Ct. App.), disc. rev. denied, 259 S.E.2d 305 (N.C. 1979); Restatement (Second) of Trusts § 129 (1959), who accordingly could seek to litigate that the otherwise discretionary termination of the trust was undertaken with an improper motive, see Restatement (Second) of Trusts §§ 187 cmt. g, 214 (1959); 4 Austin W. Scott & William F. Fratcher, The Law of Trusts § 334.1 (4th ed. 1989); see also Fortune v. First Union Nat'l Bank, 371 S.E.2d 483, 484-85 (N.C. 1988)
 The Sherman sons argue that this provision is an exculpatory clause that seeks to relieve the trustee of an intentional breach of trust and that such a provision is unenforceable when the settlor's attorney/trustee inserts the provision in the trust instrument, unless the attorney can demonstrate that he brought the provision to the attention of the settlor and that the settlor agreed to it. See 3 Austin W. Scott & William F. Fratcher, The Law of Trusts § 222.4 (4th ed. 1988). Because Hicks has presented no such evidence, we conclude that he has not demonstrated that he is entitled to judgment as a matter of law. Consequently, the district court erroneously granted summary judgment on this basis.
 
 
 [9]
 Hicks and Tucker also maintain that the Sherman sons cannot demonstrate that they were damaged as a result of any undue influence Hicks may have exercised over Sherman because Tucker, acting pursuant to Sherman's durable power of attorney, also substituted Hicks as trustee. The Sherman sons contend that because Tucker also stood to benefit from the termination of the Casstevens Trust, his act of substitution was a breach of fiduciary duty and undertaken for an improper purpose. Because the district court did not reach this question, we conclude that it is best addressed in the first instance on remand