IN THE MATTER OF THE ESTATE OF GENERAL JACKSON PARRISH

No. COA00-348

(Filed 1 May 2001)

1. Estates— administration—distribution of wrongful death settlement—removal of personal representative

The clerk of superior court had authority to oversee distribution of the proceeds from a federal wrongful death action brought by a decedent's estate and retained jurisdiction to order removal of the personal representative and other relief, with the trial court likewise retaining authority to review the clerk's order. Although. wrongful death proceeds are not assets in the estate, a personal representative's authority to commence and settle these actions is incident to the collection, preservation, liquidation, and distribution of a decedent's estate, the personal representative is

IN RE ESTATE OF PARRISH

[143 N.C. App. 244 (2001)]

accountable for all property, including wrongful death proceeds, which came into her possession in relation to her duties as representative, and the clerk retains authority to remove the personal representative based on her failure to comply with statutory accounting guidelines or any other misconduct in the execution of her office, whether or not the misconduct related to the administration of estate assets.

**2. Estates— administration—accounting and removal of personal representative—hearing—right of beneficiaries to participate**

The beneficiaries of an estate had the right to participate in an action before the clerk and the subsequent action before the trial court which resulted in the distribution of wrongful death settlement proceeds and the removal of the personal representative even though the beneficiaries did not first file a formal civil action and were not parties to the action. This was an estate proceeding rather than a civil action and did not require a summons or like pleading. *In re Estate of Sturman*, 93 N.C.App. 473, indicated that interested parties are entitled to participate and be represented in proceedings before the clerk concerning estate matters, and the clerk in this case advised the beneficiaries of the hearing and requested their presence.

**3. Estates— proceeds of wrongful death action—not assets of estate**

The trial court did not err by concluding that the proceeds of a federal wrongful death action should have been distributed according to the laws of intestate succession where the personal representative argued that the settlement amount represented proceeds from pain and suffering during the decedent's lifetime and was an estate asset. An examination of the complaint and related documents reveals that the federal action was an action for wrongful death, as specified by N.C.G.S. § 28A-18-2, and none of the proceeds recovered in a wrongful death suit, whether for pain and suffering or for pecuniary loss, are assets of a decedent's estate.

**4. Estates— personal representative—compromise of claims— no presumption of good faith**

The trial court did not refuse to recognize a personal representative's right to compromise disputed or uncertain claims. A personal representative has the right to compromise a disputed

or doubtful wrongful death claim, and a review of these proceedings does not support plaintiff's argument that there was innuendo or doubt concerning her pursuit of and decision to settle the federal claim. Furthermore, neither her willingness to compromise nor her settlement of the wrongful death action was the basis of the court's decision to remove her as personal representative. All that is required of a personal representative is that she act in good faith, but she is not entitled to a presumption of good faith.

**5. Appeal and Error; Estates— choice of replacement executor—no objection at trial—no abuse of discretion**

The issue of whether the clerk of court erred by appointing the Public Administrator to oversee an estate rather than the testamentary alternative executor after removal of the original personal representative was not preserved for appeal where no such issue was presented at the trial court hearing and, even if it had been preserved, the clerk did not abuse her discretion.

Appeal by personal representative, Lucille S. White, from orders entered 18 August 1999 by Judge Robert H. Hobgood in Superior Court, Vance County. Heard in the Court of Appeals 25 January 2001.

*Mozart A. Chesson for appellant.*

*Williams, Mullen, Clark & Dobbins, P.C., by Robert L. Samuel, for appellees.*

TIMMONS-GOODSON, Judge.

In his Last Will and Testament, General Jackson Parrish ("Parrish" or "decedent") designated his daughter, attorney Lucille S. White ("White"), executrix and residuary legatee of his estate. In her capacity as the estate's personal representative, White filed an action in federal court to recover damages related to Parrish's death. White settled the federal court action in July 1998 for $275,000.00. After paying the attorneys' fees, White paid herself a commission of $133,500.00 and reimbursed herself for expenses in the amount of $40,216.41. White prepared to distribute the remainder of the court action proceeds to Parrish's heirs, pursuant to North Carolina's Wrongful Death Act, but ultimately distributed a share of the proceeds to only one heir.

On 23 February 1999, the Clerk of Superior Court ("the Clerk"), Vance County, issued an "Order to Appear and Show Cause for Failure to File Inventory/Account" against White, requesting that she appear and show cause concerning why she should not be held in contempt for failing to file an annual accounting of Parrish's estate. White filed an "accounting" on 5 March 1999 that designated the federal court action proceeds as "Estate Settlement Proceeds," which had been distributed to "Lucille S. White." White submitted an amended accounting and time sheets reflecting the work she performed in pursuing the federal court action to the Clerk via facsimile.

Following the show cause hearing and in an order entered 1 April 1999, the Clerk found the accountings filed by White unacceptable. The Clerk noted that the federal action proceeds should have been designated as wrongful death proceeds and that the faxed amended accounting should have been submitted in person, accompanied by canceled checks and receipts. The Clerk further noted that White failed to prove that the federal action proceeds existed and was unaware of certain information relating to the bank accounts in which the proceeds had been deposited.

The Clerk concluded that White was "negligent in her duties in filing accountings, distribution of [the] proceeds from the Wrongful Death action, and proof that the funds are still available to distribute according to the Intestate Succession [Act]." The Clerk further found that White "paid herself an unapproved fee . . . and reimbursed herself an unapproved amount . . . for her expenses." As a result, the Clerk ordered White to submit all proceeds from the federal court action, less attorneys' fees, for deposit into a trust fund, and revoked the letters testamentary issued to White. The Clerk further ordered White to submit information concerning her personal bank accounts and information relating to the debts and expenses incurred by Parrish's estate, including all canceled checks and receipts. The Clerk removed White from all duties relating to decedent's estate and appointed the Public Administrator "to finalize th[e] estate."

White appealed the Clerk's order to the Superior Court, specifically requesting that the court determine the nature of the federal court action proceeds. On 21 April 1999, the Clerk issued an interlocutory order, pursuant to North Carolina General Statutes section 28A-9-5, ordering "the assets of the said estate and the proceeds of the settlement of the said wrongful death action be forwarded and paid into the hands of the Clerk . . ., for safe keeping, pending the final resolution of the appeal in this matter." *See* N.C.G.S. § 28A-9-5 (1999).

IN RE ESTATE OF PARRISH

[143 N.C. App. 244 (2001)]

Following a trial *de novo*, the trial court concluded that the federal court action proceeds were indeed wrongful death proceeds and not assets of the estate. The court further concluded that because White breached her fiduciary duty, she forfeited any right to a personal representative commission. In an order entered 18 August 1999, the court ordered White to submit the wrongful death proceeds to the Clerk, less White's approved expenses. The court found White in contempt of court for the disbursement of proceeds following the entry of the Clerk's 1 April 1999 order, but allowed White to purge the contempt by submitting the full amount of the wrongful death proceeds. Finally, the court revoked the letters testamentary granted to White.

The beneficiaries to the wrongful death proceeds participating in the proceedings below—Mary Jenkins, John Parrish, Edward Parrish, David Parrish, and Reo Parrish ("the beneficiaries")—moved for an award of attorneys' fees in Superior Court. White moved to dismiss the motion, arguing that the court did not have jurisdiction to award attorneys' fees. Finding that it did indeed have jurisdiction, the court granted the beneficiaries' motion in an order entered 18 August 1999.

White now appeals the 18 August 1999 orders of the Superior Court revoking the letters testamentary and awarding attorneys' fees.

---

[1] White first contends that because the trial court found that the federal court action proceeds were not assets of the estate, the Clerk retained no authority to oversee the distribution of the proceeds. Therefore, White argues, neither the Clerk nor the trial court had jurisdiction to order an accounting of the wrongful death proceeds, to remove her as the estate's personal representative, to impose sanctions against her based upon alleged misconduct concerning the proceeds, or to order the proceeds submitted to the Clerk or Public Administrator. We disagree.

"The clerk of superior court . . . shall have jurisdiction of the administration, settlement, and distribution of *estates of decedents* . . . ." N.C.G.S. § 28A-2-1 (1999) (emphasis added). It is well established that proceeds from wrongful death actions are not part of a decedent's estate. *In re Below*, 12 N.C. App. 657, 659, 184 S.E.2d 378, 380 (1971). Therefore, "[i]n receiving funds paid in settlement of a wrongful death claim[,] a personal representative of a decedent's estate is not acting for the estate but as a trustee for the beneficiaries under the law." *Id.* at 660, 184 S.E.2d at 381. Because wrongful death

proceeds are not assets in the decedent's estate, these proceeds are not subject to the assessment of costs, *id.* at 659, 184 S.E.2d at 380, and are not subject to the payment of estate debts. N.C.G.S. §§ 28A-15-10 and 28A-18-2 (1999) (stating that "Where there has been a recovery in an action for wrongful death, the same shall not be applied to the payment of debts and other claims against the estate of decedent").

Therefore, we must determine whether the Clerk retained jurisdiction to revoke the personal representative's letters testamentary and order other related relief concerning the alleged mishandling of monies that were not assets in decedent's estate. The resolution of this issue depends upon a careful reading of the applicable statutory authority.

The clerk of superior court's jurisdiction over a decedent's estate encompasses the "[g]ranting of letters testamentary" to personal representatives. N.C.G.S. § 28A-2-1; *In re Estate of Adamee*, 291 N.C. 386, 397, 230 S.E.2d 541, 548-49 (1976). Sections 28A-9-1 and 28A-9-2 of our General Statutes grant a clerk the authority to revoke a personal representative's letters testamentary. N.C.G.S. §§ 28A-9-1 and 28A-9-2 (1999).

Personal representatives are fiduciaries in administering and distributing an estate. N.C.G.S. § 28A-13-2 (1999). Although wrongful death actions may not yield assets for the estate, a personal representative's authority to commence and settle these actions is "[i]ncident to the collection, preservation, liquidation [and] distribution of a decedent's estate." N.C.G.S. § 28A-13-3(a) (1999).

Personal representatives are obligated by statute,

> for so long as any of the property of the estate remains in [their] control, custody or possession, [to] file annually in the office of the clerk of superior court an inventory and account, under oath, of the amount of property received by [them], or invested by [them], and the manner and nature of such investment, and [their] receipts and disbursements for the past year.

N.C.G.S. § 28A-21-1 (1999); *see cf. Godfrey v. Patrick*, 8 N.C. App. 510, 512, 174 S.E.2d 674, 676 (1970) (stating that "the court has the inherent power to require any appointed fiduciary to file periodic accounts"). Our General Statutes further provide that "[a] personal representative *shall be chargeable in [her] accounts* with property not a part of the estate which comes into [her] possession at any time." N.C.G.S. § 28A-13-10 (1999) (emphasis added); *see also*

N.C.G.S. § 28A-21-3 (1999) (accounting must include "[t]he amount and value of the property of the estate" as well as "property on hand constituting the balance of the account, if any" and "[a]ll payments, charges, losses, and distributions").

If a personal representative fails to file an accounting in accordance with the aforementioned statutory provisions, a clerk of superior court may compel her to do so. N.C.G.S. § 28A-21-4 (1999); *Ingle v. Allen*, 53 N.C. App. 627, 629, 281 S.E.2d 406, 408 (1981) (*citations omitted*) (finding that original jurisdiction over accountings "should properly be initially exercised by the clerk"). If, after being compelled to file an accounting, the personal representative fails to do so or files an unsatisfactory account, "the clerk may remove [her] from office." N.C.G.S. § 28A-21-4. Letters testamentary are further revocable if "[t]he person to whom they were issued has violated a fiduciary duty through default or misconduct *in the execution of [her] office.*" N.C.G.S. § 28A-9-1(a)(3) (emphasis added).

Section 28A-23-3(a) mandates that the clerk has discretion in compensating a personal representative out of the estate assets. N.C.G.S. § 28A-23-3(a) (1999). Where an attorney acts as personal representative for an estate, the clerk, "in his discretion, is authorized and empowered to allow counsel fees to [the] attorney . . . where such attorney . . . renders professional services . . . which are beyond the ordinary routine of administration." N.C.G.S. § 28A-23-4 (1999). A clerk may compensate a personal representative out of wrongful death proceeds, where the representative performed legal services in relation to a wrongful death action and no assets remain in the estate. *In re Lessard*, 78 N.C. App. 196, 198, 336 S.E.2d 712, 714 (1985). However, "[n]o personal representative . . . , who has been guilty of . . . default or misconduct in the due execution of [her] office resulting in the revocation of [her] appointment . . . , shall be entitled to any commission." N.C.G.S. § 28A-23-3(e).

A close examination of the aforementioned statutory provisions reveals that the Clerk retained jurisdiction over the actions or misdeeds of White, whether or not she was administering estate assets. White was accountable for all property, including wrongful death proceeds, which came into her possession in relation to her duties as representative. *See cf.* 2 James B. McLaughlin, Jr. & Richard T. Bowser, *Wiggins Wills and Administration of Estates in North Carolina* § 239 n.4, at 138 (4th ed. 2000) (noting that original estate inventory submitted to clerk by personal representative "should include any wrongful death action the personal representative should bring");

*Jenkins v. Wheeler*, 69 N.C. App. 140, 144, 316 S.E.2d 354, 357 (1984) (finding allegations of attorney malpractice sufficient where plaintiff alleged, among other things, that attorney failed to advise personal representative to list wrongful death action as an asset in accounting), *disc. review denied*, 311 N.C. 758, 321 S.E.2d 136 (1984). Moreover, White should have sought the Clerk's approval prior to paying herself a commission out of the wrongful death proceeds.

The Clerk further retained the authority to remove White based on her failure to comply with the statutory accounting guidelines or any other misconduct "in the execution of [her] office," whether that misconduct related to the administration of estate assets or not. N.C.G.S. §§ 28A-9-1(a)(3) and 28A-23-3(e). Accordingly, the Clerk in the case *sub judice* retained jurisdiction to order White's removal and other relief in relation to her handling of the wrongful death proceeds. The trial court likewise retained the authority to review the Clerk's order *de novo*. *See In re Estate of Longest*, 74 N.C. App. 386, 328 S.E.2d 804, 807, *disc. review denied*, 314 N.C. 330, 333 S.E.2d 488 (1985). White's first argument is therefore without merit.

**[2]** By her next argument, White contends that the beneficiaries did not have a right to participate in the action before the Clerk or the trial court because they failed to first file a formal civil action and because they were not "parties" in the action below. With this argument, we cannot agree.

We recognize that an action for damages resulting from a fiduciary's breach of duty in the administration of a decedent's estate is not a claim under the original jurisdiction of the clerk of court. Such actions should, therefore, be brought as civil actions in the trial division of Superior Court. *See Ingle*, 53 N.C. App. at 628-29, 281 S.E.2d at 407; *see also In re Estate of Wright*, 114 N.C. App. 659, 661-62, 442 S.E.2d 540, 542, *cert. denied*, 338 N.C. 516, 453 S.E.2d 172 (1994); *In re Estate of Neisen*, 114 N.C. App. 82, 86, 440 S.E.2d 855, 858, *disc. review denied*, 336 N.C. 606, 447 S.E.2d 397 (1994). However, the proceeding below was not a civil action, but a proceeding concerning an estate matter, which was exclusively within the purview of the Clerk's jurisdiction, and over which the Superior Court retained appellate, not original, jurisdiction. *See Ingle*, 53 N.C. App. 627, 281 S.E.2d 406. Furthermore, neither hearings to revoke letters testamentary nor to show cause concerning an accounting require a summons or other like pleadings for their initiation. *See* N.C.G.S. §§ 28A-9-1 and 28A-21-1; *In re Estate of Sturman*, 93 N.C. App. 473, 476, 378 S.E.2d 204, 205-06 (1989). It follows that the hearing below to compel an

accounting and remove the personal representative was a proceeding properly before the Clerk, for which the beneficiaries were not required to commence a civil action.

Concerning the beneficiaries' right to participate in the proceeding below, we find the case *In re Estate of Sturman*, 93 N.C. App. 473, 378 S.E.2d 204, instructive. In S*turman*, the clerk of court appointed a *guardian ad litem* to represent the interests of minor heirs at a hearing to remove the administratrix of the decedent's estate. On appeal to our Court, the administratrix argued that the court did not have the authority to appoint a guardian under Rule 17 of the Rules of Civil Procedure, because "the minor heirs were not 'parties' to the revocation procedure." *Id.* at 475, 378 S.E.2d at 205. This Court concluded that the clerk of court had the authority to appoint the guardian to represent the heirs' interest in the proceeding because "the minor heirs had a vested interest in who administered the estate of their [decedent]." *Id.*

Although the *Sturman* court was specifically concerned with a clerk's authority to appoint a guardian per Rule 17, it nevertheless indicated that interested parties are entitled to participate and be represented in proceedings before the clerk concerning estate matters. In the case *sub judice*, the Clerk advised the beneficiaries of the hearing and requested their presence. Like the *Sturman* heirs, the beneficiaries, also legatees under Parrish's will, clearly had an interest in the wrongful death proceeds, *see Below*, 12 N.C. App. at 660, 184 S.E.2d at 381 (noting that personal representative acts as beneficiaries' trustee), as well as the estate in general, and could, therefore, participate in the hearing. Accordingly, we find no merit in White's argument.

[3] We next address White's argument that the trial court erred in concluding that the proceeds from the federal court action were wrongful death proceeds that should have been distributed according to the laws of intestate succession. White asserts that the settlement amount represented proceeds resulting from Parrish's pain and suffering during his lifetime. The proceeds, White argues, were therefore estate assets, which she, as Parrish's residuary legatee, was allowed to distribute into her personal account. We disagree.

"An action for wrongful death did not exist at common law and rests entirely upon [a statute]." *Christenbury v. Hedrick*, 32 N.C. App. 708, 711, 234 S.E.2d 3, 5 (1977) (citation omitted). Prior to 1969, North Carolina's Wrongful Death Act limited the damages recoverable in wrongful death actions to those that represented "a

fair and just compensation for the pecuniary injury resulting from such death." N.C.G.S. § 28-174 (1957) (superseded by N.C.G.S. § 28A-18-2(b)). Recovery for pecuniary losses pursuant to the wrongful death statutes was based on the principle that "[a] cause of action for wrongful death, being conferred by statute at death, could never have belonged to the deceased." *Below*, 12 N.C. App. at 659, 184 S.E.2d at 380. Rather, such an action belonged to the decedent's heirs, the individuals who actually suffered a pecuniary loss. *Bowen v. Rental Co.*, 283 N.C. 395, 415, 196 S.E.2d 789, 803 (1973). To that end, our Wrongful Death Act specified that damages recoverable were not assets in decedent's estate, were to be distributed per the laws of intestate succession, and were not subject to estate debts. *Id.* at 413, 196 S.E.2d at 801.

Moreover, prior to 1969, actions for wrongful death were distinct and separate from actions for pain and suffering, and hospital treatment caused by tortious injury that eventually led to death. *Id.* at 412, 196 S.E.2d at 801. Actions for pain and suffering and hospital care, commonly known as "survival actions," belonged to the decedent and survived to his personal representative upon the decedent's death. *See id.* at 421, 196 S.E.2d at 806. Because survival actions yielded proceeds which, in essence, belonged to the decedent, unlike wrongful death proceeds, those proceeds were considered estate assets, passed under a decedent's will, and were subject to estate debts. *Id.*

In 1969, our General Assembly determined that pecuniary damages for wrongful death actions "severely limited recovery." *DiDonato v. Wortman*, 320 N.C. 423, 429, 358 S.E.2d 489, 492 (1987); *see also* 1969 N.C. Sess. Laws ch. 215 preamble. As such, the legislature amended our Wrongful Death Act to allow for recovery unrelated to decedent's income. *DiDonato*, 320 N.C. at 429, 358 S.E.2d at 492. With the exception of minor amendments and additions, the 1969 version of the wrongful death statutory provisions appeared as the wrongful death statute does today:

When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their personal representatives or collectors, shall be liable to an action for damages, to be brought by the personal representative or collector of the decedent . . . . The amount recovered in such action is not liable to be applied as assets, in the payment of debts or

legacies, except as to burial expenses of the deceased, and reasonable hospital and medical expenses . . . incident to the injury resulting in death, . . . but shall be disposed of as provided in the Intestate Succession Act.

N.C.G.S. § 28A-18-2(a). According to the statute, "[d]amages recoverable for death by wrongful act [now] include" pecuniary losses, hospital expenses "incident to the injury resulting in death[,]" pain and suffering, funeral expenses, punitive damages, and nominal damages. N.C.G.S. § 28A-18-2(b).

The addition of damages previously recoverable only in survival actions to the list of damages recoverable in a wrongful death action created confusion as to the allocation of court action proceeds between a decedent's estate and those entitled to take under the laws of intestacy. *Bowen*, 283 N.C. at 422, 196 S.E.2d at 807. In *Forsyth County v. Barneycastle*, 18 N.C. App. 513, 197 S.E.2d 576, *cert. denied*, 283 N.C. 752, 198 S.E.2d 722 (1973), this Court indicated that none of the proceeds recovered in a wrongful death suit, whether for pain and suffering or pecuniary loss, are assets of a decedent's estate. We find guidance in *Forsyth County* as to the nature of the settlement proceeds in the case *sub judice*.

In *Forsyth County*, the decedent allegedly died as a result of an automobile accident occurring eight days prior to her death. The administratrix of the decedent's estate "negotiated a compromise settlement" with the insurance carrier "for the personal injuries to and death of decedent caused by the negligence of [the driver]." *Id.* at 514, 197 S.E.2d at 577. Forsyth County asserted a claim to the proceeds, based upon a debt of the decedent. The administratrix refused to pay the debt out of the settlement proceeds, claiming they were wrongful death proceeds, not subject to the debts of the decedent.

This Court found that although the proceeds constituted both damages for the decedent's personal injury and death, the settlement monies were wrongful death proceeds, according to the plain language of North Carolina's Wrongful Death Act. *Id.* at 516-17, 197 S.E.2d at 578-79. The Court stated:

Under the present provisions of [the Wrongful Death Act] the conclusion seems inescapable that all of the items of damages which might conceivably have been set out in a claim for personal injuries prior to death are now includable [sic] in an action for damages for death by wrongful act. . . . All damages 'recoverable for death by wrongful act' as enumerated in G.S. [§ 28A-18-2(b)] are subject to the exemption conferred by G.S. [§ 28A-18-2(a)].

The plain language of the [statute], in our judgment permits no other result. . . .

. . . .

If there is to be any change in [the Wrongful Death Act], which [is] now clear as written, it is a matter for the legislature, not the court.

*Id.* (citations omitted). The Court therefore concluded that because the county's claims were against the general assets of the estate and the settlement amount constituted funds recovered for wrongful death, the county was not entitled to any part of the wrongful death proceeds. *Id.* at 517, 197 S.E.2d at 579.

We must, therefore, determine whether the proceeds from the federal court action in the case *sub judice* were for damages related to Parrish's wrongful death or damages for Parrish's pain and suffering, somehow unrelated to his death. An examination of the complaint and related documents filed in federal court reveals that the federal action was an action for wrongful death, as specified by section 28A-18-2. The federal civil action cover sheet notes that the "lawsuit [arose] out of [a] wrongful death action due to medical malpractice." The federal complaint was entitled, "Medical Malpractice-Wrongful Death Action." The allegations in the complaint related only to the defendants' negligence allegedly resulting in Parrish's death. In the complaint's prayer for relief, White requested "all damages recoverable for [Parrish's] wrongful death."

The specific damages requested included compensation for Parrish's "severe mental and physical pain and anguish" along with

> a sum sufficient to compensate [the estate] for the present monetary value of [Parrish] to his family, represented by the income he would have received during his normal life expectancy, his physical, emotional and mental pain and suffering, his services, protection, care and assistance, society, companionship, security, comfort to his next of kin and for funeral, hospital, and medical bills, and punitive damages.

The damages pled by White are virtually identical to those available under the Wrongful Death Statute. *See* N.C.G.S. § 28A-18-2(b). Furthermore, White testified that she brought the action to recover damages related to both Parrish's pain and suffering and wrongful death. In accordance with *Forsyth County* and the plain

meaning of section 28A-18-2, because the action was for damages related to Parrish's death, and the damages sought were those listed in the statute, we conclude that the federal action settlement proceeds constituted wrongful death proceeds.

White's own actions in preparing to distribute the federal court action proceeds supports our aforementioned conclusion. White maintained in the original hearing before the Clerk that the proceeds were wrongful death proceeds, which she was not required to list in her accounting and out of which she could pay herself fees without the Clerk's approval. In fact, White testified that "in accordance with the [Wrongful Death] Statute," she requested that the beneficiaries sign a release concerning the federal action settlement, and even distributed at least a portion of the proceeds to one beneficiary. White further informed the beneficiaries of their share of the settlement.

White argues that under the statute, recovery of "wrongful death proceeds" is contingent upon affirmative proof or an admission by the defendants that a person's death resulted from their negligence. Therefore, White asserts, the language of the settlement agreement ("the agreement") in the case *sub judice* is tantamount to determining the nature of the proceeds. According to White, the agreement indicates that the federal action proceeds were not for wrongful death because it "refers only to claims arising out of personal injuries, treatments for such and for health care, and to associated expenses." White further notes that "[n]either the word 'death,' [nor] synonyms for it, appear anywhere in the text of the agreement[.]" With this argument, we cannot agree.

First, the statute governing the duties of a personal representative allows the representative to settle wrongful death actions, presumably without proof of or admission that wrongful actions led to a decedent's death. N.C.G.S. § 28A-13-3(a)(23); *Forsyth County*, 18 N.C. App. at 515, 197 S.E.2d at 577 (citations omitted) (stating that "money received by a compromise settlement stands on the same basis as if it had been recovered by litigation"). Second, the agreement referred to by White, actually entitled "FULL AND FINAL RELEASE & CONFIDENTIALITY AGREEMENT," does not specify, as White implies, that the settlement proceeds were for Parrish's injuries and not wrongful death. The agreement simply states that White "releas[ed]" defendants from all claims which she may have against them

by reason of any injury, pain and suffering of the plaintiff, any and all medical, surgical, and other health-care treatment of any kind

whatsoever which anyone, including but not limited to the Released Parties, allegedly provided or failed to provide to [Parrish] at any time, and all expenses of any kind incurred by anyone for medical, surgical, health-care treatment, and hospitalization.

We recognize that in certain cases a settlement agreement may shed light upon the nature of proceeds recovered in an action. In examining the agreement *sub judice*, however, we find that it gives no indication as to the nature of the federal court action proceeds, but states only that the defendants were released from further litigation. Given the evidence in the record on appeal concerning the nature of the federal action—the federal court complaint and White's initial actions in preparing to distribute the federal court action proceeds, we conclude that the monies recovered were wrongful death proceeds and therefore, should have been distributed according to the Intestate Succession Act.

**[4]** White next argues that the trial court erred in refusing to recognize her right to compromise disputed or uncertain claims. White asserts that "[n]o evidence of any dishonesty or imprudence on her part was ever produced; merely suggestions and innuendo . . . that either she was somehow deliberately responsible for the failure to establish a wrongful death claim . . . or that she had lied to the other heirs about the nature of the recovery." White further asserts that "this must clearly be the basis" for the trial court's ruling. White also argues that she was entitled to a presumption that she acted in good faith in overseeing Parrish's estate. We cannot agree.

It is true that a personal representative has the right to compromise a disputed or doubtful wrongful death claim. N.C.G.S. § 28A-13-3(a)(23); *Forsyth County*, 18 N.C. App. at 515, 197 S.E.2d at 577. However, a review of the proceedings before the trial court does not support White's argument that there was "innuendo" or doubt concerning White's pursuit of and decision to settle the federal court claim. Furthermore, contrary to White's argument, neither her willingness to compromise nor her settlement of the wrongful death action was the basis of the court's decision. Rather, her failure to distribute the assets as wrongful death proceeds, along with her wavering position concerning the nature of the proceeds, were the basis of the trial court's decision. Following the hearing, the trial court concluded that "White [was] estopped from asserting that the proceeds recovered are not wrongful death proceeds by her actions and conduct as shown in the evidence presented to [the] [c]ourt."

IN RE ESTATE OF PARRISH

[143 N.C. App. 244 (2001)]

Certainly, all that is required of a personal representative is that she "act in good faith." *McGill v. Freight,* 245 N.C. 469, 474-75, 96 S.E.2d 438, 443 (1957) (citation and internal quotation marks omitted). Despite this well-established principle, White is not entitled to a presumption of acting in good faith. A review of her own testimony reveals that she did not have an honest misunderstanding concerning the nature of the federal court action proceeds. Rather, the hearing is saturated with examples of someone who intentionally claimed the federal action proceeds were either wrongful death proceeds or estate assets, depending upon whichever characterization justified her actions. White explained that she did not report her personal representative commission to the Clerk because the wrongful death statute did not require her to do so. White further testified that she did not submit the federal court action proceeds to the Clerk pending appeal to the trial court because they were deemed wrongful death proceeds, not assets of the estate, over which the Clerk had no jurisdiction. However, White testified that it was her understanding that she was the sole beneficiary to the proceeds.

White was further questioned concerning a $15,000.00 check paid to one of Parrish's sisters out of the wrongful death proceeds after the Clerk's 1 April 1999 order. Although Parrish's sister was not an heir and thus, clearly not entitled to wrongful death proceeds, White testified, "Well, I think, you know, when you're doing the wrongful death statutes, you look at the loss to the beneficiaries, what their loss was. And my aunt was extremely close to my dad." Given White's blatant disregard for her duties, we find no merit in her argument.

**[5]** By her final assignment of error, White contends that the trial court erred in appointing the Public Administrator, rather than the testamentary alternative executor, to oversee Parrish's estate. Because White failed to argue any issues concerning the appointment of the Public Administrator at the trial court hearing, we conclude that she did not properly preserve her final assignment of error for appeal. *See* N.C.R. App. P. 10(b)(1). Even if White had properly preserved the aforementioned argument, we find the Clerk did not abuse her discretion in appointing the Public Administrator, rather than the testamentary alternative, to finalize the estate. *See* N.C.G.S. 28A-4-2(9) (1999) (stating that a person is not qualified to serve as a personal representative if he "[i]s a person whom the clerk of superior court finds otherwise unsuitable"); *In re Moore,* 292 N.C. 58, 65, 231 S.E.2d 849, 854 (1977).

For the foregoing reasons, we affirm the orders of the trial court.

Affirmed.

Judges MARTIN and THOMAS concur.