HELEN LOCUST, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF LESTER R. TYSON, PLAINTIFF v. PITT COUNTY MEMORIAL HOSPITAL, INC., JAMES M. GALLOWAY, M.D., LINDA G. MONTEITH, M.D., AND PITT FAMILY PHYSICIANS, DEFENDANTS

No. COA01-1467

(Filed 19 November 2002)

**1. Wrongful Death— abandonment by spouse—surviving siblings—no surviving action**

A wrongful death action against a hospital and doctors could not survive with decedent's siblings as the only remaining beneficiaries where decedent's estranged wife had willfully abandoned decedent and was thus barred by N.C.G.S. § 31A-1(a)(5) from sharing in the proceeds of a recovery for the wrongful death of her husband because all of the wrongful death benefits would have been distributed to decedent's wife had she not abandoned him; the wife's abandonment of decedent did not mandate that she be treated as having predeceased her husband; when beneficiaries are precluded from recovery of wrongful death proceeds due to their bad acts, any remaining beneficiaries only receive their original percentage distribution; and there was no percentage share decedent's siblings could claim as remaining beneficiaries to keep the wrongful death action alive.

**2. Wrongful Death— pleadings—survival claim—delineation of theory required**

The trial court did not err by dismissing a portion of a wrongful death complaint which plaintiff contended was a survival claim (which belongs to the decedent as opposed to his heirs) where the damages sought were lumped together because they related to a single wrongful death claim. Plaintiffs should carefully delineate the theory under which they seek recovery.

Judge WYNN concurring in part, dissenting in part.

Appeal by plaintiff from order filed 22 August 2001 by Judge James R. Vosburgh in Pitt County Superior Court. Heard in the Court of Appeals 10 September 2002.

*Burford & Lewis, PLLC, by Robert J. Burford, for plaintiff appellant.*

*Harris, Creech, Ward and Blackerby, P.A., by R. Brittain Blackerby, for defendant-appellees Pitt County Memorial Hospital, Inc. and Linda G. Monteith, M.D.*

*Herrin & Morano, L.L.P., by Mickey A. Herrin, for defendant-appellees James M. Galloway, M.D., and Pitt Family Physicians.*

GREENE, Judge.

Helen Locust (Plaintiff), individually and as the administratrix of the estate of her deceased brother Lester R. Tyson, appeals an order filed 22 August 2001 granting summary judgment in favor of Pitt County Memorial Hospital, Inc., James M. Galloway, M.D., Linda G. Monteith, M.D., and Pitt Family Physicians (collectively Defendants).

On 2 June 1994, Plaintiff filed a complaint against Defendants to recover damages "for the wrongful death of [Lester] Tyson," including: (1) damages for his care, treatment, and hospitalization; (2) pain and suffering and loss of enjoyment of life; (3) mental anguish; (4) funeral expenses; (5) present and future monetary value to his wife, brother, and sisters; and (6) punitive damages. Lester Tyson was survived by his estranged spouse, Brenda Tyson, and his brother and sisters. Plaintiff subsequently moved for a voluntary dismissal of her complaint on 16 November 1994.

On 17 July 1995, Plaintiff filed a "Statement of Renunciation and Acts Barring Property Rights" (the Statement) signed by Brenda Tyson. Brenda Tyson had been married to but was separated from Lester Tyson at the time of his death in June 1992. In the Statement, Brenda Tyson, pursuant to Chapter 31A of the North Carolina General Statutes, purported to "renounce . . . any interest in the estate of Lester Tyson or any interest in any wrongful death action brought by reasons of his death."[1] Brenda Tyson further stated:

> When [she] voluntarily left Lester Tyson against his wishes and for no fault on his part in 1989, it was [her] intent that [they] should live and die totally separate and apart, and therefore [she] did not visit, communicate with, or have anything to do with Lester Tyson . . . after [she] voluntarily left him . . . . In 1989, [she]

---

1. We note that Brenda Tyson's renunciation, for the benefit of Lester Tyson's siblings, of any interest she might have in a wrongful death action arising from her husband's death did not bar her from being a beneficiary in a subsequent wrongful death action. *See Evans v. Diaz,* 333 N.C. 774, 430 S.E.2d 244 (1993) (renunciation of wrongful death benefits invalid).

LOCUST v. PITT CTY. MEM'L HOSP.

[154 N.C. App. 103 (2002)]

wilfully and without just cause abandoned and refused to live with Lester Tyson and [she] was not living with him at the time of his death.

Plaintiff timely refiled her complaint against Defendants on 9 November 1995. On 24 July 2001, Defendants moved for summary judgment. The trial court entered an order on 22 August 2001 granting Defendants' motion and dismissing the case on the grounds that the North Carolina Supreme Court's decision in *Evans v. Diaz* barred Plaintiff from pursuing this action because Brenda Tyson's acts prevented her from succeeding to any property interest under the Wrongful Death Act.

---

The issues are whether: (I) the acts admitted in the Statement barred Plaintiff from pursuing a wrongful death action on behalf of Brenda Tyson and Lester Tyson's siblings; and (II) Plaintiff's complaint included a survival action outside the scope of *Evans*.

I

[1] In a wrongful death action, "the real party in interest is not the estate but the beneficiary of the recovery as defined in the [Wrongful Death] Act." *Evans*, 333 N.C. at 776, 430 S.E.2d at 245 (citing *Davenport v. Patrick*, 227 N.C. 686, 688, 44 S.E.2d 203, 205 (1947)). Pursuant to the Wrongful Death Act, the proceeds of a recovery in an action for wrongful death "shall be distributed to the same persons, and in the same proportionate shares, as the personal property of the decedent . . . would be distributed if the decedent died intestate." *Williford v. Williford*, 288 N.C. 506, 509, 219 S.E.2d 220, 222-23 (1975); N.C.G.S. § 28A-18-2(a) (2001) (distribution according to the Intestate Succession Act). Thus, if the decedent "is not survived by a child, children, or any lineal descendant of a deceased child or children, or by a parent," the decedent's spouse receives all of the wrongful death proceeds. N.C.G.S. § 29-14(b)(4) (2001).

Because Lester Tyson's parents were dead and he had no children, Brenda Tyson would therefore be entitled to all of the wrongful death benefits as the surviving spouse, leaving no portion of the recovery for distribution to Lester Tyson's siblings. Brenda Tyson, however, admitted that, in 1989, she "wilfully and without just cause abandoned and refused to live with Lester Tyson and . . . was not living with him at the time of his death." This constitutes one of the acts barring a spouse's right of intestate succession. *See* N.C.G.S. § 31A-1(a)(3), (b)(1) (2001) ("[a] spouse who wilfully and without just

cause abandons and refuses to live with the other spouse and is not living with the other spouse at the time of such spouse's death" loses "[a]ll rights of intestate succession in the estate of the other spouse"). Accordingly, Brenda Tyson is barred from sharing in the proceeds of a recovery for the wrongful death of her husband. *See Williford*, 288 N.C. at 510, 219 S.E.2d at 223 (a father, having abandoned the deceased when the latter was a minor child, may not share in the proceeds of the settlement of the claim for wrongful death of his child); *see also Evans*, 333 N.C. at 778, 430 S.E.2d at 246 (mother who killed her son through the negligent operation of an automobile had no interest in any wrongful death recovery).

The issue thus remains whether Plaintiff's wrongful death action could survive with Lester Tyson's siblings as remaining beneficiaries. According to N.C. Gen. Stat. § 29-15 "[t]hose persons surviving the intestate, other than the surviving spouse, shall take that share of the net estate not distributable to the surviving spouse, or the entire net estate if there is no surviving spouse." N.C.G.S. § 29-15 (2001). As *all* of the wrongful death benefits would have been distributable to Brenda Tyson had she not abandoned Lester Tyson, there is no percentage share Lester Tyson's siblings could claim as remaining beneficiaries to keep the wrongful death action alive. Accordingly, Lester Tyson's siblings could only continue the wrongful death action if Brenda Tyson's abandonment mandated that she be treated as having predeceased her husband. This, however, is not the case.

The only statutory provision that specifically treats a person as predeceased is the slayer statute. *See* N.C.G.S. § 31A-4 (2001). The applicable statute in this case, section 31A-1(a), merely states a person who abandons her spouse "shall lose the rights [of intestate succession]." N.C.G.S. § 31A-1(a) (2001). In the context of wrongful death actions involving beneficiaries who engaged in bad acts, this rule has been interpreted to preclude distribution of their share of the wrongful death recovery. *See Williford*, 288 N.C. at 509, 219 S.E.2d at 222-23; *Cummings v. Locklear*, 12 N.C. App. 572, 574, 183 S.E.2d 832, 834 (1971) (as the husband who would have had a one-third intestacy share in wife's estate, but whose wrongful act caused her death, was barred from sharing in a wrongful death recovery, leaving the wife's children as the remaining beneficiaries, the trial court was instructed to enter judgment for only two-thirds of the amount of the verdict should the jury return a verdict in the plaintiff's favor). Any remaining beneficiaries do not succeed to a full one hundred percent recovery but only receive their original percentage distribution of the

judgment as dictated by sections 29-14 and -15 of the Intestate Succession Act. Because, as noted above, Lester Tyson's siblings' share of a wrongful death recovery in this case would be zero, the trial court did not err in granting Defendant's motion for summary judgment on the wrongful death claim.[2]

## II

**[2]** Plaintiff next contends that because the complaint also alleged damages pursuant to a survival action, the trial court erred in dismissing that portion of the complaint.

Damages for the pain and suffering of as well as the hospital care for a decedent used to only be recoverable in survival actions. *In re Parrish*, 143 N.C. App. 244, 253, 547 S.E.2d 74, 79, *disc. review denied*, 354 N.C. 69, 553 S.E.2d 201 (2001). These types of actions belong to the decedent as opposed to his heirs and survive to the decedent's personal representative upon his death. *Id.* In 1969, the General Assembly modified the Wrongful Death Act to include recovery for the decedent's pain and suffering and hospital care. *See id.*; N.C.G.S. § 28A-18-2(b)(1)-(2) (2001). Today, the administratrix of an estate thus has the option of claiming damages for the decedent's pain and suffering and hospital care under either a survival or a wrongful death action.

If Plaintiff's complaint in this case does indeed include a survival claim, the trial court erred in dismissing that portion of her complaint relying on the holding in *Evans. See Parrish*, 143 N.C. App. at 253, 547 S.E.2d at 79 (survival actions belong to the decedent). Consequently, we must determine whether Plaintiff's complaint alleged damages solely under the Wrongful Death Act or included a survival action as well.

According to the Wrongful Death Act, recoverable damages include:

(1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;

(2) Compensation for pain and suffering of the decedent;

(3) The reasonable funeral expenses of the decedent;

---

2. Plaintiff further argues the doctrine of laches barred Defendants from moving to dismiss this case based on *Evans*. Having reviewed the record on appeal, we find no merit in this argument.

(4) The present monetary value of the decedent to the persons entitled to receive the damages recovered . . . ;

(5) Such punitive damages as the decedent could have recovered pursuant to Chapter 1D of the General Statutes had he survived, and punitive damages for wrongfully causing the death of the decedent through malice or willful or wanton conduct, as defined in G.S. 1D-5;

(6) Nominal damages when the jury so finds.

N.C.G.S. § 28A-18-2(b) (2001).

The allegations in a pleading must be liberally construed so as to do substantial justice. N.C.G.S. § 1A-1, Rule 8(f) (2001); *Smith v. N.C. Farm Bureau Mut. Ins. Co.*, 84 N.C. App. 120, 123, 351 S.E.2d 774, 776, *aff'd*, 321 N.C. 60, 361 S.E.2d 571 (1987). While a request for damages based on a decedent's pain and suffering and hospital care can be construed as invoking an action for survival, in the context of this case, Plaintiff only intended to go forward with a wrongful death claim. In her complaint, Plaintiff states a claim "for the wrongful death of [Lester] Tyson" and then proceeds to plead all the damages listed in section 28A-18-2(b) with the exception of nominal damages. *See Parrish*, 143 N.C. App. at 255-56, 547 S.E.2d at 81 (holding the plaintiff's action was one for wrongful death and not survival where damages listed in complaint were identical to damages listed in the Wrongful Death Act). Also, there is no indication in the complaint that upon recovery the damages for Lester Tyson's pain and suffering and hospital care would be distributed to his estate as opposed to his heirs. Instead, it appears the damages sought were lumped together because they related to a single claim: wrongful death. Accordingly, the trial court did not err in dismissing Plaintiff's complaint.[3]

Affirmed.

Judge BIGGS concurs.

Judge WYNN concurs in part and dissents in part.

---

3. As the only difference between a claim for damages for pain and suffering and/or hospital care under a survival action or a wrongful death action relates to the distribution of the proceeds of a recovery, a plaintiff should carefully delineate in her complaint under which theory she seeks to recover. *See Parrish*, 143 N.C. App. at 253, 547 S.E.2d at 79 (the recovery in a survival action goes to the estate whereas in a wrongful death action, it is distributed pursuant to the Intestate Succession Act).

WYNN, Judge concurring in part, dissenting in part.

Although I concur in the majority's holding relevant to the survival action, I respectfully dissent from the majority's holding interpreting the Wrongful Death Act to bar the siblings of Lester Tyson from recovering because of the bad acts of Tyson's estranged wife.

The majority correctly notes that N.C. Gen. Stat. § 29-15 provides that: "Those persons surviving the intestate, shall take that share of the net estate not distributable to the surviving spouse, or the entire net estate if there is no surviving spouse." The majority broadly defines "distributable," however, to include situations in which the surviving spouse is statutorily barred from recovery. For instance, although Brenda Tyson "willfully and without just cause abandoned" her husband, and, therefore, was barred by N.C. Gen Stat. § 31A-1(a)(3) from intestate succession, the majority reasons that the decedent-spouses' net estate was still "distributable" to her. Consequently, the majority concludes, the intestates, who only include brothers and sisters of the decedent, Lester Tyson, are barred from recovery because the estate was "distributable" to Brenda Tyson. I dissent because this result is not only unfair and inconsistent, it perverts the relevant statute to judicially decide that a spouse's willful abandonment of her husband bars the husband's brothers and sisters from the benefits of his estate.

In support of this inequitable proposition, the majority states that "Lester Tyson's siblings could only continue the wrongful death action if Brenda Tyson's bad acts mandated that she be treated as having pre-deceased her husband." The majority, however, cites no statutory or case law in direct support of this proposition. Rather, the majority relies on *Cummings v. Locklear*, 12 N.C. 572, 183 S.E.2d 832 (1971) and *Williford v. Williford*, 288 N.C. 506, 219 S.E.2d 220 (1975).

In *Cummings*, our Supreme Court held that a husband could not share in a wrongful death recovery against his insurer, where the husband was legally negligent and responsible for the death of his wife. Accordingly, this Court held that the husband's intestate share, one-third of the recovery, could not be given to his children. Our holding in *Cummings*, however, is inapposite in the case *sub judice* for two reasons.

First, Brenda Tyson was not responsible for the death of Lester Tyson. In fact, the record makes it apparent that the reason Brenda

Tyson made an affirmative "Statement of Renunciation and Acts Barring Property Rights" to the estate of Lester Tyson was because of a reasonable legal interpretation of the relevant statute, N.C. Gen. Stat. § 29-15, that once she renounced her interest the intestate heirs would take "the entire net estate." The record provides no other motive for Brenda Tyson's renunciation.

Second, in *Cummings* this Court held that the children of the father could not take his intestate share, where the father negligently caused the death of the mother. Here, however, the intestates seeking recovery are not related to Brenda Tyson, the alleged wrongdoer. Rather, the intestates are the brothers and sisters of the decedent Lester Tyson. Why should the decedents of Lester Tyson be punished for the alleged bad acts of Brenda Tyson?

Likewise, the holding in *Williford* is inapposite to the case *sub judice*. In fact, a close reading of *Williford*, is contrary to the holding of the majority. In *Williford*, our Supreme Court held that a father, who abandoned his child, could not share in the wrongful death recovery of that abandoned child.

First, the facts of *Williford* are significantly different because Brenda Tyson is not seeking to share in the wrongful death recovery. Rather, Brenda Tyson was merely renouncing her rights in order to expedite the apparent rights of the intestates. Second, and most importantly, in *Williford* our Supreme Court did not limit the wrongful death recovery by one half, simply because the father was barred from recovery. Instead, the entire recovery was awarded to the mother. Thus, in *Williford*, the father's statutory bar to recovery did not prevent the other intestate, his former wife, from succeeding in his half of the recovery.

In my view, once Brenda Tyson renounced her interest in the estate of Lester Tyson, the assets of the estate were no longer "distributable" to her under N.C. Gen. Stat. § 29-15. Consequently, "[t]hose persons surviving the intestate, [should] take that share of the net estate not distributable to the surviving spouse." Since nothing was "distributable" to Brenda Tyson after the renunciation, the intestates should take everything. Accordingly, I respectfully dissent.