C.F.R. FOODS, INC. v. RANDOLPH DEVELOPMENT COMPANY

No. 9119SC757

(Filed 6 October 1992)

**Vendor and Purchaser § 6 (NCI3d)— commercial real estate transaction—no intent to deceive—no reliance on deception**

Plaintiff's claims for actionable fraud and negligent misrepresentation in the purchase of a commercial property were properly dismissed where plaintiff showed neither defendant's intent to deceive nor plaintiff's own reasonable reliance on the deception, since this was a transaction involving commercial real estate between two commercial parties and defendant accordingly owed no duty of disclosure to plaintiff;

C.F.R. FOODS, INC. v. RANDOLPH DEVELOPMENT CO.

[107 N.C. App. 584 (1992)]

prior to its purchase, plaintiff requested and received from defendant a topographical map which contained both the original and current soil grades, including a specific indication that fill had been placed upon certain portions of the parcel; this map served to put plaintiff on notice that a further investigation of the soil would be prudent before beginning construction, but plaintiff failed to make one; plaintiff's reliance was not reasonable; and plaintiff was contributorily negligent in not performing further investigation.

**Am Jur 2d, Vendor and Purchaser §§ 554-556.**

APPEAL by plaintiff from order signed 20 March 1991 by *Judge Russell G. Walker, Jr.* in RANDOLPH County Superior Court. Heard in the Court of Appeals 25 August 1992.

This case involves defendant's sale of commercial land ("Out Parcel Number 5") to plaintiff. Defendant initially purchased a tract of land known as the Randolph Mall site, which included Out Parcel Number 5, to build a shopping mall. Defendant hired ATEC Associates to perform a preliminary subsurface investigation and a geotechnical engineering evaluation. ATEC's 13 February 1980 report referred to "two areas of existing fill which apparently resulted from previous grading on the sight. These areas are suspected of having buried organic material including trees and tree stumps." ATEC's second report revealed the precise location and reaffirmed ATEC's earlier recommendation to "undercut" and "backfill" the areas. On 1 June 1980, defendant contracted to have the unsuitable materials removed. During grading, the lot was "excavated, undercut, and backfilled" to a level consistent with the anticipated floor level of the mall. The out parcels were then smooth graded and sown with grass.

The trial judge made the following findings of fact concerning plaintiff's later purchase of the land:

9. . . . But for its ancillary connection, by virtue of its continued operation of the mall, the Defendant had no further contact with this parcel [Out Parcel Number 5], until such time as the Plaintiff demonstrated its purchase interest in 1986.

10. Mr. Ken Moser is a Vice President of the Western Steer Mom and Pop, and his duties include site development for the Western Steer Chain, as well as construction coordina-

C.F.R. FOODS, INC. v. RANDOLPH DEVELOPMENT CO.

[107 N.C. App. 584 (1992)]

tion. Cecil Hash and Ken Moser, officers of the Plaintiff, negotiated the purchase of Out Parcel Number 5, for approximately three months. On November 6, 1986, J.C. Faw, a Principal in Plaintiff-Corporation, entered into a contract for purchase and sale, with the defendant, at a purchase price of $175,000.00, which permitted immediate access to the property for the purpose of ". . . making soil tests thereon, conducting a survey of said property, engineering the property, and/or determining the suitability and feasibility of the land for development . . .".

11. During purchase negotiations no representations were made by Defendant or its representatives to the Plaintiff or its representatives, relative to the condition of the parcel or its feasibility for the plaintiff's intended use.

12. The Defendant did not in any willful, negligent, fraudulent, knowing or reckless manner conceal from or fail to disclose to Plaintiff or its representative any material fact regarding the condition of this parcel or its suitability for Plaintiff's intended use, and such "non-disclosure" was not pursuant to any intent or design to trick or induce the Plaintiff to rely thereon, nor did the Defendant engage in any unfair or deceptive conduct or practice which would have the capacity or tendency to deceive.

13. On or about October 10, 1986, the Defendant forwarded to the Plaintiff, at Plaintiff's request, a topographical map, which contained, *inter alia*, the original grade on subject parcel, and the then-existing grade, indicating that a considerable amount of "fill" had been placed upon portions of the parcel.

14. Prior to the closing of the purchase of Out Parcel Number 5, no geotechnical investigation was conducted by or on behalf of the Plaintiff, nor did the plaintiff make any inquiry of the defendant, although it was afforded ample opportunity to do so.

15. By Warranty Deed dated February 10, 1987 . . . the Defendant conveyed Out Parcel Number 5 to the Plaintiff.

. . . .

17. Prior to beginning construction, no geotechnical investigation was conducted by Plaintiff on this site. It is, [sic]

C.F.R. FOODS, INC. v. RANDOLPH DEVELOPMENT CO.

[107 N.C. App. 584 (1992)]

Plaintiff's established policy not to conduct pre-construction soil evaluations and it has not previously done so in constructing numerous Western Steer Restaurants.

18. Plaintiff also based its decision not to test the soil upon its observation that the parcel was grassed and that it "appeared" to be a ready-to-build lot.

19. That Plaintiff's reliance on this assumption was negligent, shows a lack of due diligence, and was unreasonable.

20. Plaintiff did, however, conduct extensive investigations, relative to traffic flow, national demographics, and the "come to" aspects of the proposed restaurant location, in an effort to anticipate potential sales.

21. Plaintiff then selected a prototype restaurant, previously approved on other Western Steer sites, but made no effort to site-adapt the prototype to this parcel.

After the restaurant opened, cracks appeared in the walls. Plaintiff hired an engineering firm to analyze the damage. The firm's test conclusions found the structural damage directly resulted from settlement of the soil beneath the restaurant, which was partially caused by decomposition of the organic material or trash.

On 24 May 1989, plaintiff filed a complaint against defendant alleging fraud, negligent misrepresentation, and unfair and deceptive trade practices. The parties waived a jury trial. The trial court heard evidence from both parties on 14 January 1991. Defendant moved for a directed verdict.

On 20 March 1991, the trial court, treating defendant's motion as a motion for involuntary dismissal pursuant to N.C.G.S. § 1A-1, Rule 41(b), granted defendant's motion and dismissed the action with prejudice. From this judgment, plaintiff appeals.

*Greeson, Grace and Gatto, P.A., by Michael R. Greeson, Jr. and Lisa S. Costner, for plaintiff-appellant.*

*Smith, Casper, Smith & Alexander, by Archie L. Smith, Jr., for defendant-appellee.*

EAGLES, Judge.

Plaintiff contends that the trial court did not base its findings on competent evidence and erred by granting defendant's motion

for involuntary dismissal with prejudice. After a careful examination of the record, we disagree and affirm.

The standard regarding involuntary dismissal is as follows:

"When a motion to dismiss pursuant to [N.C.G.S. § 1A-1, Rule] 41(b) is made, the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him." *Dealers Specialties, Inc. v. Neighborhood Housing Services, Inc.*, 305 N.C. 633, 640, 291 S.E.2d 137, 141 (1982). The trial judge in a non-jury case does not weigh the evidence in the light most favorable to the plaintiff as he does on a motion for directed verdict in a jury trial. *Id.* at 638, 291 S.E.2d at 13. Dismissal with prejudice pursuant to a Rule 41(b) motion is a judgment on the merits, subject to the usual rules of *res judicata. Barnes v. McGee*, 21 N.C.App. 287, 289, 204 S.E.2d 203, 205 (1974).

*Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis*, 86 N.C. App. 51, 55, 356 S.E.2d 372, 375 (1987).

Plaintiff argues that its claims of actionable fraud and negligent misrepresentation should have survived the motion for involuntary dismissal because it met its burden of proof on all essential elements. We disagree.

First, plaintiff alleges that defendant's nondisclosure was fraudulent because defendant "had at least constructive knowledge" of the presence of the organic materials from the 13 February 1980 report by ATEC. In *Rowan County Board of Education v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658-59 (1992), our Supreme Court stated:

The essential elements of fraud are: "(1) [F]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)); *accord Cofield v. Griffin*, 238 N.C. 377, 379, 78 S.E.2d 131, 133 (1953).

Additionally, plaintiff's reliance must be reasonable. *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 594, 394 S.E.2d 643, 647 (1990), *rev. denied*, 328 N.C. 89, 402 S.E.2d 824 (1991); *Myers & Chapman,*

C.F.R. FOODS, INC. v. RANDOLPH DEVELOPMENT CO.

[107 N.C. App. 584 (1992)]

*Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989). Here, plaintiff showed neither defendant's intent to deceive nor plaintiff's own reasonable reliance. We note that this was a transaction involving commercial real estate between two commercial parties. Accordingly, defendant owed no duty of disclosure to plaintiff. *Libby Hill Seafood Restaurants, Inc. v. Owens*, 62 N.C. App. 695, 699, 303 S.E.2d 565, 568, *rev. denied*, 309 N.C. 321, 307 S.E.2d 164 (1983).

"An action in fraud for misrepresentations regarding realty will lie *only* where the purchaser has been fraudulently induced to forego inquiries which he otherwise would have made. Thus, the representation generally must be definite and specific." *Id.* at 698, 303 S.E.2d at 568 (citations omitted). The evidence before the trial court showed that prior to its purchase, plaintiff requested and received from defendant a topographical map. This map contained both the original and current soil grades, including a specific indication that fill had been placed upon certain portions of the parcel.

This map served to put plaintiff on notice that a further investigation of the soil would be prudent before beginning construction. Instead, plaintiff chose to rely upon the mere appearance of the land, which it alleges *appeared* "ready-to-build." The trial court correctly found that plaintiff's reliance was not reasonable and that plaintiff was contributorily negligent in not performing further investigation. The agreement for purchase and sale gave plaintiff access to the property to perform tests. Furthermore, plaintiff's president, Cecil Hash, testified that such pre-construction soil tests had not been performed in the purchase of other properties by plaintiff, because "I never saw a need to do it."

Where "the purchaser has full opportunity to make pertinent inquiries but fails to do so through no artifice or inducement of the seller, an action in fraud will not lie." *Id.* at 698, 303 S.E.2d at 568. Here, plaintiff had a full opportunity to make pertinent inquiries and failed to do so through no inducement of the seller. By the exercise of reasonable diligence prior to its purchase, plaintiff could have discovered the problem and protected its interests accordingly. Similarly, the negligent misrepresentation claim fails because plaintiff has not established that defendant has breached any duty of care it owed as a seller of commercial real estate. *Id.* at 699, 303 S.E.2d at 568-69.

Finally, plaintiff's claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 was appropriately dismissed. "In essence, a party is guilty of an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position." *Libby Hill*, 62 N.C. App. at 700, 303 S.E.2d at 569. We find no such conduct here and hold that the trial court properly dismissed the unfair and deceptive trade practices claim.

Affirmed.

Judges JOHNSON and PARKER concur.