STATE OF NORTH CAROLINA ex rel. Susan B. Pilard, Elizabeth B. Requena, John Berninger, Thomas Berninger and Joanne Berninger; SUSAN B. PILARD; ELIZABETH B. REQUENA; JOHN BERNINGER; THOMAS BERNINGER; and JOANNE BERNINGER, Plaintiffs v. BLANCA R. BERNINGER and GREAT AMERICAN INSURANCE COMPANY, Defendants

No. COA01-1272

(Filed 19 November 2002)

1. Estates— necessary parties—conversion—breach of fiduciary duty—representative capacity as administratrix

Neither decedent's estate nor his second wife in her representative capacity as administratrix were necessary parties in a conversion action brought by decedent's children against the wife

in her individual capacity, although both may have been proper parties. However, the wife in her representative capacity was a necessary party to a determination of the children's claim against her for breach of fiduciary duty because it was only in that capacity that any fiduciary duty arose.

**2. Estates— subject matter jurisdiction—tort claim against administratrix of estate**

A de novo review revealed that the trial court did not err in an action for breach of fiduciary duty and conversion arising out of the administration of an estate by denying defendants' motion to dismiss based on lack of subject matter jurisdiction, because: (1) contrary to defendants' assertions, the gravamen of the complaint is not solely a claim for a proper accounting and distribution of decedent's assets when the complaint properly alleged a claim for conversion; (2) tort claims against administrators of estates resulting from the manner in which the estate was administered are within the original jurisdiction of the trial division and not the clerk of superior court; and (3) although this claim may arise in part out of the administration of an estate, it is not part of the administration, settlement, and distribution of the estate.

**3. Collateral Estoppel and Res Judicata— res judicata—no final judgment—different issues**

A conversion action brought by decedent's children against decedent's wife, who was the administratrix of his estate, was not barred by res judicata based upon a petition filed by the children with the clerk of superior court in the estate proceeding alleging that decedent's assets had not been entirely accounted for and reported by the administratrix and the resulting consent order requiring the production of bank records because (1) the conversion claim could not have been brought before the clerk; (2) neither the final account nor the consent order was a final judgment on the conversion issue; and (3) the prior estate proceedings involved different issues.

**4. Estates— certificates of deposit—purchase by decedent's wife—half ownership by decedent**

The evidence in a conversion action against decedent's wife was sufficient to support the trial court's finding and conclusion that decedent owned a legal or equitable one-half interest in certificates of deposit at the time of his death and that such interest should have been included in his estate, even though the certifi-

cates were in only the wife's name, where it showed that the certificates of deposit were purchased with funds withdrawn from a demand deposit account of which decedent and his wife were co-owners and not from a 100% survivorship account.

5. **Conversion— certificates of deposit—decedent's wife— sufficiency of evidence**

The evidence was sufficient to support the trial court's finding and conclusion that decedent's wife converted decedent's assets where it showed that the wife withdrew money from a joint account to purchase three certificates of deposit; that decedent thus owned a one-half interest in the certificates of deposit; and that the wife assumed control of the certificates of deposit without authorization.

Appeal by defendants from judgment entered 1 June 2001 by Judge J. Richard Parker in Chowan County Superior Court. Heard in the Court of Appeals 15 August 2002.

*W. T. Culpepper, III, for plaintiff-appellee.*

*The Twiford Law Firm, L.L.P., by H.P. Williams, Jr., and R. Michael Cox, for defendant-appellant.*

MARTIN, Judge.

Plaintiffs, who are the children of John Alfred Berninger ("decedent") from his first marriage, brought this action against defendant Berninger, decedent's second wife, in her individual capacity, and Great American Insurance Company as surety, seeking damages for Berninger's alleged breach of fiduciary duty and conversion arising out of her administration of their father's estate. Defendants denied the substantive allegations of the complaint and moved to dismiss for failure to join a necessary party, lack of subject matter jurisdiction, and *res judicata*. The motion was denied.

Evidence presented at trial tended to establish that Berninger and decedent lived as husband and wife until decedent died intestate on 12 February 1992. On 15 May 1989, decedent and Berninger opened as co-owners two certificates of deposit (numbers 10130224768 and 10130224769) with Centura Bank. The certificates were set up under a depositor's contract, or signature card, bearing the account number 13-0000815, which registered the account as a joint certificate of deposit with a right of survivorship. On the same

day, decedent and Berninger also opened a demand deposit account (number 10130158762) as co-owners, and executed a signature card registering the account as joint with survivorship to be governed by G.S. § 41-2.1 (2001).

On 29 January 1990, decedent and Berninger purchased three new certificates of deposit (numbers 10130251661, 10130251662, and 10130251663) as co-owners at Centura Bank. The certificates were purchased with monies owned jointly and equally by decedent and Berninger. Decedent and Berninger did not execute a new or separate depositor's contract or signature card at this time. The new certificates of deposit referred to "Customer Number 13-0000815," the same account number contained on the 15 May 1989 signature card. According to bank records, the only depositor's contract or signature card ever jointly executed by decedent and Berninger for a certificate of deposit was the 15 May 1989 signature card.

On or about 26 December 1991, decedent was hospitalized, where he remained until his death on 12 February 1992. Testimony of family and friends who visited decedent in the hospital established that from the time he was hospitalized until his death, decedent was incapable of communicating; he was very weak, could barely move, and could neither talk nor write legibly.

In early January 1992, Linda Evans, a customer service representative with Centura Bank, received a telephone call from Berninger. Evans testified Berninger requested to redeem the certificates of deposit held jointly with decedent and to deposit the funds into their joint demand deposit account, which was then a survivorship account. Evans testified that for signature cards executed prior to September 1989, which included the signature card for the demand deposit account executed by decedent and Berninger in May 1989, the survivorship feature only provided the survivor with one-half of the account, while the remaining half would go to the decedent's estate. Evans testified that bank policy changed in September 1989, and thereafter, customers had the option of executing signature cards making their account "a hundred percent (100%) right of survivorship account" wherein the survivor would receive 100% of the funds. Evans discussed with Berninger the possibility that she and decedent could change their demand deposit account to a 100% right of survivorship account, and Berninger expressed a desire to do so. Evans informed Berninger that she would first need to submit a written request to redeem the certificates of deposit.

Shortly after 14 January 1992, Evans received a letter from Berninger stating that she and decedent were "in New York staying with my sister on a short vacation" and requesting transfer of the three most recent certificates of deposit (numbers 10130251661, 10130251662, and 10130251663) into their demand deposit account. Evans responded to the letter on 23 January 1992 by mailing Berninger redemption forms to redeem the certificates of deposit, and a new signature card to change decedent's and Berninger's demand deposit account into "a hundred percent (100%) right of survivorship account" as previously discussed. Around 28 January 1992, Evans received the redemption forms signed by Berninger and the signature card purportedly signed by decedent and Berninger. As a result, Evans redeemed the certificates as requested and deposited the proceeds into the demand deposit account controlled by the new signature card.

Plaintiffs presented expert testimony in the field of document examination to the effect that the purported signature of decedent on the 1992 signature card was not, in fact, decedent's signature. Plaintiffs themselves also testified that the signature was not their father's, and that decedent was incapable of having signed his name at the time the new signature card was executed.

On 10 February 1992, at Berninger's request, Evans transferred $225,000 from the demand deposit account into three new certificates of deposit in the amount of $75,000 each issued solely in Berninger's name. Evans testified that she never had any contact with decedent while handling the transactions, and that she only dealt with Berninger.

On 27 February 1992, Berninger was qualified as administratrix of decedent's estate, and served as such until the filing of a final account on 12 November 1993. On 28 February 1992, Berninger, as principal, and defendant Great American, as surety, executed a joint and several security bond obligation to the State of North Carolina for $50,000 conditioned on Berninger's proper and lawful administration of decedent's estate.

On 5 October 1992, plaintiffs filed a petition in the estate proceeding alleging decedent's assets had not been entirely accounted for and reported by Berninger on a 90-Day Inventory filed 11 June 1992. The petition requested the production of records from various financial institutions, as well as tax returns of decedent and Berninger for various years. As a result, a Consent Order was entered

on 12 November 1992 requiring the production of bank records from eleven separate financial institutions. No further actions resulting from the petition were taken in the estate, and a final account of the estate was filed 12 November 1993.

On 10 February 1995, plaintiffs instituted this action by filing a complaint alleging Berninger had converted three certificates of deposit, as well as various other property owned by decedent, and that Berninger breached her fiduciary duty as administratrix of decedent's estate by failing to account for and properly distribute decedent's assets. Plaintiffs also sought damages pursuant to G.S. § 28A-8-6 against Great American on the bond executed by Berninger and Great American. The matter was tried by the court sitting without a jury. At the close of plaintiffs' evidence, defendants renewed the previous motion and also moved to dismiss for insufficiency of the evidence under G.S. § 1A-1, Rule 41(b) (2001). The trial court again denied the original motion to dismiss, and granted the Rule 41(b) motion with respect to Berninger's conversion of certain items of tangible personal property and household furnishings, but not as to plaintiffs' claims based on the monies held in the three certificates of deposit. Defendants renewed both motions to dismiss at the close of all of the evidence; the motions were denied.

The trial court entered judgment in favor of plaintiffs on 1 June 2001, finding and concluding, among other things, that the signature on the new signature card for the joint demand deposit account was not decedent's; that "[a]t the time of his death . . . [decedent] was the legal or equitable owner of a one-half (½) interest in" the three certificates of deposit Berninger opened in her sole name with funds from the joint demand deposit account; that this one-half interest should have been included in decedent's estate and administered as such; that Berninger failed to properly account for and distribute all assets of decedent's estate, and in so doing, breached her fiduciary duties as administratrix of the estate; and that Great American is therefore obligated on the surety bond. The trial court ordered that defendants pay $67,187.93 plus interest and costs of the action, that Great American and Berninger were jointly and severally liable for $50,000 of the amount, and that Berninger was individually liable for the remainder. Defendants appeal.

Defendants argue on appeal that the trial court erred in denying their motions to dismiss for four reasons: (1) plaintiffs failed to join a necessary party; (2) the trial court lacked subject matter jurisdiction;

(3) plaintiffs' action was barred by *res judicata*; and (4) the evidence was insufficient to support the trial court's finding and conclusion that plaintiffs had an interest in the monies held in the three certificates of deposit which Berninger opened solely in her name, or that Berninger was guilty of wrongdoing. We agree with defendants that Berninger, in her official capacity as administratrix of decedent's estate, was a necessary party to plaintiffs' claim for breach of fiduciary duty.

I.

[1] Defendants first maintain the trial court should have dismissed the complaint for plaintiffs' failure to join a necessary party. Defendants argue that the estate and Berninger in her capacity as administratrix of the estate were the "real parties in interest," and that plaintiffs' failure to join Berninger in her capacity as administratrix is fatal to the complaint. " 'A "necessary" party is one whose presence is required for a complete determination of the claim, and is one whose interest is such that no decree can be rendered without affecting the party.' " *Godette v. Godette*, 146 N.C. App. 737, 739, 554 S.E.2d 8, 9 (2001) (citation omitted). The trial court in this case concluded that "[a]ll parties necessary for a complete determination of the issues that arise from the pleadings in this action are properly before the Court." We agree with the trial court that the estate was not a necessary party to plaintiffs' action and that Berninger in her capacity as administratrix was not necessary to a determination of their conversion claim; however, we disagree that Berninger in her representative capacity was not a necessary party to a determination of plaintiffs' claim for breach of fiduciary duty.

With respect to the conversion claim, defendants have failed to provide a legal basis for their argument that either the estate or Berninger in her representative capacity were necessary parties to a determination of that claim. Although both may have been "proper parties," or those "whose interest may be affected by a decree," the estate and Berninger as administratrix are clearly not necessary parties to adjudication of the conversion claim, inasmuch as they are not "so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without [its] presence." *See Crosrol Carding Developments, Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 451-52, 183 S.E.2d 834, 837 (1971). While a necessary party must be joined in an action, it is within the sound discretion of the trial court as to whether to join a proper party. *Id.* at 451, 183 S.E.2d at 837.

However, with respect to the breach of fiduciary duty claim, Berninger was required to be joined in her capacity as administratrix, for it was only in that capacity that any fiduciary duty arose. Berninger owed no such duty to plaintiffs as an individual. In *Davis v. Singleton*, 259 N.C. 148, 130 S.E.2d 10 (1963), our Supreme Court held that a complaint alleging the administratrix of an estate failed to properly distribute the estate to a rightful beneficiary was a matter involving the administratrix in her official capacity, and thus, the administratrix was required to be made a party not only in her individual capacity, but also in her capacity as administratrix. *Id.* at 153, 130 S.E.2d at 14. We are bound by *Davis* to hold plaintiffs were required to join Berninger in her administrative capacity in order to pursue their claim for breach of fiduciary duty because that claim is necessarily based solely on Berninger's actions as administratrix, not as an individual. Thus, defendants' motion to dismiss plaintiffs' claim against Berninger for breach of fiduciary duty should have been granted. Likewise, because Great American's obligation on the surety bond was premised solely on Berninger's duties and actions as administratrix of decedent's estate, its motion to dismiss should have been granted.

## II.

**[2]** Defendants next argue the trial court erred when it denied their motion to dismiss the complaint for lack of subject matter jurisdiction. Specifically, defendants maintain plaintiffs' action is actually a claim for a proper accounting and distribution of decedent's assets and that the clerk of superior court has exclusive jurisdiction over such matters pursuant to G.S. §§ 7A-241 and 28A-2-1 (2002). Again, we disagree. "[T]he standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo.*" *County Club of Johnston County, Inc. v. United States Fidelity & Guar. Co.*, 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002).

First, we disagree with defendants' contention that the gravamen of the complaint is solely a claim for a proper accounting and distribution of decedent's assets. The complaint alleges a claim for conversion. A complaint states a claim for conversion when it alleges ownership and an unauthorized assumption or conversion. *See Lake Mary Ltd. Partnership v. Johnston*, 145 N.C. App. 525, 551 S.E.2d 546, *disc. review denied*, 354 N.C. 363, 557 S.E.2d 538 (2001). Here, the complaint alleged that decedent died intestate; that plaintiffs are his heirs; that Berninger purchased the three certificates of deposit in her sole name with funds owned jointly by her and decedent; that at

the time of his death decedent owned a one-half interest in the three certificates of deposit; that Berninger failed to account for decedent's interest in the certificates while administering his estate; and that, to the contrary, Berninger "converted [decedent's interest] to her own use." The trial court found and concluded that decedent owned an interest in the funds which Berninger held in her sole name, and that Berninger wrongfully failed to include those funds as part of the estate.

This Court has specifically established that tort claims against administrators of estates resulting from the manner in which the estate was administered are within the original jurisdiction of the trial division, not the clerk of superior court. *See Ingle v. Allen*, 69 N.C. App. 192, 317 S.E.2d 1, *disc. review denied*, 311 N.C. 757, 321 S.E.2d 135 (1984). The plaintiff in *Ingle* brought suit against the administrators of her husband's estate, alleging improprieties in their handling of the estate which amounted to breach of fiduciary duty, fraud, and negligence. *Id.* at 193-94, 317 S.E.2d at 2. The defendants sought to dismiss the action for lack of subject matter jurisdiction, arguing that the clerk of superior court had exclusive jurisdiction over " 'the administration, settlement and distribution of estates of decedents.' " *Id.* at 195, 317 S.E.2d at 3 (quoting N.C. Gen. Stat. § 28A-2-1).

This Court rejected this argument, noting that claims such as breach of fiduciary duty, fraud, and negligence are " ' "justiciable matters of a civil nature," original general jurisdiction over which is vested in the trial division.' " *Id.* at 195-96, 317 S.E.2d at 3 (citations omitted). We held that " '[w]hile the claims arise from administration of an estate, their resolution is not a part of "the administration, settlement and distribution of estates of decedents" so as to make jurisdiction properly exercisable initially by the clerk.' " *Id.* at 196, 317 S.E.2d at 3 (citations omitted); *see also, In re Estate of Parrish*, 143 N.C. App. 244, 251, 547 S.E.2d 74, 78 ("We recognize that an action for damages resulting from a fiduciary's breach of duty in the administration of a decedent's estate is not a claim under the original jurisdiction of the clerk of court. Such actions should, therefore, be brought as civil actions in the trial division of Superior Court."), *disc. review denied*, 354 N.C. 69, 553 S.E.2d 201 (2001); *Matter of Wills of Jacobs*, 91 N.C. App. 138, 141-42, 370 S.E.2d 860, 863 (noting "our courts distinguish cases which 'arise from' the administration of an estate from those which are 'a part of' the administration and settlement of an estate;" only those matters "a part of" the administration

of an estate are within exclusive original jurisdiction of the clerk of superior court), *disc. review denied,* 323 N.C. 476, 373 S.E.2d 863 (1988).

In summary, plaintiffs' complaint properly alleges a claim for conversion. According to *Ingle,* although this claim may arise in part out of the administration of an estate, it is not a part of the administration, settlement and distribution of the estate. Rather, it is a "justiciable matter[] of a civil nature" over which original jurisdiction is vested in the trial court. This argument is overruled.

## III.

**[3]** Defendants next assert that plaintiffs' 5 October 1992 petition filed before the clerk of superior court involved the same parties and addressed the same issues as plaintiffs' complaint in this action, and thus, this action was barred by the doctrine of *res judicata.*

"The doctrine of *res judicata* provides that a final judgment on the merits in a prior action precludes a second suit based on the *same cause of action* between the same parties or those in privity with them." *Holly Farm Foods, Inc. v. Kuykendall,* 114 N.C. App. 412, 416, 442 S.E.2d 94, 97 (1994) (emphasis added). "*Res judicata* not only bars the relitigation of matters determined in the prior proceeding but also ' "all material and relevant matters within the scope of the pleadings, which the parties, in the exercise of reasonable diligence could and should have brought forward." ' " *Id.* (citations omitted). The aim of the doctrine is to protect litigants from "the burden of relitigating previously decided matters and to promote judicial economy by preventing unnecessary litigation." *Id.* at 417, 442 S.E.2d at 97.

A review of the petition, Consent Order, and complaint in this case reveals the two proceedings involved different claims. Plaintiffs were not required to have brought their conversion claim in the petition before the clerk of superior court; in fact, this claim could not have been brought before the clerk, because, as previously noted, such claims are not within the jurisdiction of the clerk of superior court, but are within the original general jurisdiction of the trial court. In any event, neither the final account nor the Consent Order which resulted from the filing of the petition was by any means a final judgment on the issue of Berninger's conversion. Indeed, the only effect of the Consent Order was to require various financial institutions to produce their copies of records pertaining to accounts owned or formerly owned by decedent. Plaintiffs were not barred from bringing this action based on *res judicata* where no previous final

judgment on the merits of their claim in this case has been rendered, where the prior estate proceedings involved different issues, and where their claim could not have been brought before the clerk of superior court.

## IV.

Finally, defendants argue the evidence was insufficient to (1) support the trial court's finding and conclusion that, at the time of his death, decedent owned a one-half interest in the three certificates of deposit which belonged to his estate; and (2) support any claim against Berninger for either conversion or breach of fiduciary duty. These arguments stem from the denial of defendants' motion to dismiss for insufficiency of the evidence under G.S. § 1A-1, Rule 41(b). When a party moves to dismiss pursuant Rule 41(b), the trial judge becomes both the judge and jury and must weigh all competent evidence before him. *C.F.R. Foods, Inc. v. Randolph Development Co.*, 107 N.C. App. 584, 588, 421 S.E.2d 386, 388, *disc. review denied*, 333 N.C. 166, 424 S.E.2d 906 (1992). "Dismissal under this statute is left to the sound discretion of the trial court." *Matter of Oghenekevebe*, 123 N.C. App. 434, 437, 473 S.E.2d 393, 396 (1996).

[4] First, defendants contend the evidence does not support the trial court's findings and conclusions that decedent owned a legal or equitable one-half interest in the certificates of deposit at the time of his death, and that this interest should have been included in the estate. We disagree. The evidence clearly established that the three certificates of deposit were purchased with funds owned equally by Berninger and decedent. Thus, decedent maintained a one-half interest in the certificates.

Since the evidence supports the conclusion that decedent owned a one-half interest in the certificates of deposit at the time of his death, it necessarily follows that this interest was a part of his estate at the time of his death, as our statutes define an estate as "all the property of a decedent." *See* N.C. Gen. Stat. § 29-2(2) (2002); *see also Matter of Estate of Francis*, 327 N.C. 101, 108, 394 S.E.2d 150, 155 (1990) (defining estate as "all of the property owned by the decedent which she may direct to her legatees and devisees under a will and which would pass to her heirs and next of kin under the laws of intestacy if she died without a will."). The fact that Berninger placed decedent's interest into certificates of deposit held only in her name does not extinguish decedent's interest, as the evidence shows the certificates of deposit were purchased with funds withdrawn from the

demand deposit account of which decedent and Berninger were co-owners, thereby making the certificates joint tenancy property.

Defendants expend much effort in arguing that a 100% right of survivorship applied to decedent's interest in the certificates at the time of his death, noting that the funds used to purchase the three certificates came from an account that had such a feature and that prior to that, the funds were contained in other certificates of deposit also carrying a right of survivorship. However, Evans' testimony established that the survivorship feature on the demand deposit account, absent execution of a new signature card, would only have provided half of the funds to Berninger, while half would have gone to decedent's estate. According to her testimony, the demand deposit account could only be changed to a 100% right of survivorship account by execution of a new signature card. However, the trial court determined the signature on the new signature card purporting to change the demand deposit account to a 100% survivorship account was not decedent's, and thus, the signature card did not meet the statutory requirements for creation of that type of account. Defendants have not disputed this finding.

In any event, even if the demand deposit account carried a 100% right of survivorship feature, any such feature became of no consequence the moment Berninger transferred its assets into new certificates of deposit. The evidence is conclusive that at the time of decedent's death, his interest was not being held in an account or certificate subject to a right of survivorship, as the certificates were held solely in Berninger's name.

Moreover, defendants' argument that Berninger should be declared the sole owner of the funds because that is what she and decedent intended is without merit; it is well-established that a right of survivorship cannot be created by the intentions of the parties without satisfaction of the statutory requirements. *See, e.g., Mutual Community Savings Bank, S.S.B. v. Boyd,* 125 N.C. App. 118, 122, 479 S.E.2d 491, 493 (1997) (extrinsic or parol evidence of parties' intent to establish joint tenancy with right of survivorship inadmissible); *Powell v. First Union Nat. Bank,* 98 N.C. App. 227, 229, 390 S.E.2d 461, 462 (1990) (regardless of clear intent of parties to establish joint savings account with right of survivorship, survivorship account not created where statutory requirements not met).

Quite simply, at the time of decedent's death, the joint funds used to purchase the three new certificates were not being held

subject to a right of survivorship, and therefore, decedent's interest should have been included in his estate. We agree with the trial court that decedent owned a legal or equitable one-half interest in the certificates of deposit at the time of his death, and that this interest should have passed to his heirs upon his death. Therefore, the trial court did not abuse its discretion in failing to grant defendants' motion on this ground.

[5] Defendants also argue plaintiffs have no right to relief because the evidence failed to establish that Berninger converted decedent's assets or that she breached a fiduciary duty as administratrix of decedent's estate through her failure to disclose any conversion of decedent's property and to properly account for and distribute all assets rightfully belonging to the estate.

" 'The tort of conversion is well defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." ' " *Lake Mary Ltd. Partnership*, 145 N.C. App. at 531, 551 S.E.2d at 552 (citations omitted). " 'The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act.' " *Id.* at 532, 551 S.E.2d at 552 (citation omitted). Thus, "[i]t is clear then that two essential elements are necessary in a complaint for conversion—there must be ownership in the plaintiff and a wrongful conversion by defendant." *Id.*

Moreover, a spouse may be held liable for conversion for an unauthorized withdrawal of joint funds. *Myers v. Myers*, 68 N.C. App. 177, 181, 314 S.E.2d 809, 813 (1984) (holding plaintiff-wife's allegations that she deposited funds into a joint checking account with defendant-husband, and that he converted the funds to his own use and refused to account for such funds without her knowledge or consent were sufficient to state claim for conversion and survive motions for summary judgment and directed verdict). In this case, plaintiffs have alleged and shown sufficient evidence of both an ownership interest in the property at issue, and that Berninger assumed control of that property without authorization. The evidence was sufficient to support a conclusion that Berninger converted decedent's assets, and thus, the trial court did not err in denying defendants' motion on this basis. As to plaintiffs' breach of fiduciary duty claim, we have

STATE ex rel. UTILS. COMM'N v. THRIFTY CALL, INC.

[154 N.C. App. 58 (2002)]

already held plaintiffs were not entitled to bring that claim for their failure to join Berninger in her capacity as administratrix of decedent's estate.

Accordingly, we reverse the judgment of the trial court with respect to its determination that Berninger breached a fiduciary duty to plaintiffs, and as to Great American's liability on the surety bond. We affirm the judgment against defendant Berninger for conversion and the award of damages in the amount of $67,187.93 plus interest and costs of the action.

Reversed in part; affirmed in part.

Judges TYSON and THOMAS concur.