JOSEPH HORRY, JR., PLAINTIFF v. DAVID H. WOODBURY, INDIVIDUALLY, AND AS THE EXECUTOR OF THE ESTATE OF RUTH N. HORRY, DEFENDANT

No. COA07-477

(Filed 15 April 2008)

**1. Estates— standing—estate beneficiary—acts by attorney-in-fact—failure to. assert demand or seek removal of executor**

Plaintiff estate beneficiary had no standing to challenge defendant's conduct prior to decedent's death in an action alleging defendant, the executor of decedent's estate, engaged in improper conduct while acting under a power of attorney for decedent because: (1) as a beneficiary of the estate, plaintiff's challenges to defendant's actions prior to decedent's death must be asserted by a demand upon the executor, or by seeking to remove the executor through petition before the clerk of superior court; (2) no allegations in the complaint and no evidence in the record showed that plaintiff did either of the conditions precedent prior to filing this action; and (3) plaintiff, as a creditor, next of kin, or beneficiary of the estate, cannot assert a *jus tertii* claim for a debt due to the decedent without a demand upon the executor or petition before the clerk of superior court to remove the executor.

**2. Conversion— funds deposited in new account—joint tenants with rights of survivorship**

The trial court did not err in a conversion case by granting partial summary judgment against defendant for funds deposited in new accounts 6749-2 and 6753-6 because: (1) the signature card for source accounts numbered 5508-4 and 5900-0 were personally signed by decedent and defendant, and specifically listed both parties as owners of the accounts; (2) no evidence in the record showed that decedent and defendant agreed with or required the bank to demand that withdrawals contain both owners' signatures; and (3) as a matter of law, plaintiff could not establish that defendant's actions constituted conversion of the source account of which defendant and decedent individually opened and owned as joint tenants with rights of survivorship.

**3. Appeal and Error— preservation of issues—failure to assert issue at trial**

Although defendant contends the trial court erred by failing to grant decedent and defendant, in his individual capacity, a right of equitable subrogation against plaintiff for the funds paid from source account 5508-4 based on plaintiff's default on a loan for which the account was pledged collateral, this assignment of error is overruled, because: (1) defendant attempted to bring this claim for the first time on appeal under N.C.G.S. § 1A-1, Rule 54(c); and (2) defendant's reliance on Rule 54(c) is misplaced.

Judge McCULLOUGH concurring in part and dissenting in part.

Appeal by defendant from orders entered 21 September 2005 and 8 October 2005 by Judge Steve A. Balog in Durham County Superior Court. Heard in the Court of Appeals 1 November 2007.

*Brady, Nordgren, Morton & Malone, PLLC, by Travis K. Morton, for plaintiff-appellee.*

*Hendrick Murray & Cheek, PLLC, by Josiah S. Murray, III, and John C. Rogers, III, for defendant-appellant.*

TYSON, Judge.

This cause of action arises from Joseph Horry, Jr.'s ("plaintiff") claims that David H. Woodbury ("defendant"), in his individual capacity and as executor of the estate of Ruth N. Horry ("decedent"), engaged in improper conduct while acting under a power of attorney for decedent and while serving as the executor of decedent's estate.

The affidavits and evidence before the superior court, relevant to this appeal, tended to show that decedent and defendant, decedent's cousin, maintained a close relationship. On 13 April 1999, decedent and defendant entered the branch of Mechanics & Farmers Bank at which decedent regularly banked and opened savings account number *****5508-4 ("source account 5508-4"), naming decedent and defendant as joint account owners with rights of survivorship. That account was initially opened with $64,802.42 of decedent's funds. Both decedent and defendant individually signed the signature card for that account.

On 13 March 2000, decedent executed a durable power of attorney naming defendant as attorney-in-fact. The power of attor-

ney expressly authorized defendant to engage in fifteen categories of transactions, including banking transactions and personal property transactions.

On 3 October 2000, decedent and defendant opened money market account number *****5900-0 ("source account 5900-0"), naming decedent and defendant as joint account owners with rights of survivorship. That account was initially opened with $63,107.12 of decedent's funds. Both decedent and defendant individually signed the signature card for that account.

In November of 2002, plaintiff, decedent's nephew and sole beneficiary under decedent's will, who lived in New York, was experiencing financial difficulties and contacted defendant seeking financial assistance. Sometime prior to 30 May 2003, source account 5508-4 was pledged as security for a loan from Mechanics & Farmers Bank to plaintiff. After partial repayment of the loan, plaintiff defaulted. On 30 May 2003, Mechanics & Farmers Bank closed source account 5508-4, using a portion of the funds from that account to pay the unpaid balance of plaintiff's loan.

On that same day, 30 May 2003, defendant individually opened the two accounts at issue in this appeal. Defendant used the balance of funds previously held in source account 5508-4 as the initial deposit for account number *****6749-2 ("new account 6749-2"), which named decedent and defendant as joint account owners. On the signature card for new account 6749-2, defendant signed defendant's name as owner and decedent's name in defendant's capacity as attorney-in-fact for decedent. In addition, because decedent was being moved to a skilled nursing facility, upon the recommendation of a bank employee, defendant closed source account 5900-0 and used the funds held in that account as the initial deposit for account number *****6753-6 ("new account 6753-6"), which he individually signed and also named decedent and defendant as joint account owners. New account 6753-6 was recommended because it would enable defendant to make three withdrawals per month without being charged a service fee. On the signature card for new account 6753-6, defendant signed his name individually as owner as well as decedent's name in defendant's capacity as attorney-in-fact for decedent.

On 1 June 2003, decedent died. Defendant asserted ownership to the funds to all the aforementioned joint bank accounts. On 21 October 2004, plaintiff filed an action against defendant asserting claims that defendant made improper payments, engaged in

constructive fraud, breached his fiduciary duty, and converted decedent's funds.

On 21 September 2005, Superior Court Judge Steve A. Balog granted partial summary judgment in favor of plaintiff for claims against defendant for the funds deposited in: (1) new account 6753-6, in the amount of $60,962.14; and (2) new account 6749-2, in the amount of $71,412.08. Defendant appeals.

## I. Issues

Defendant argues the trial court erred when it: (1) granted partial summary judgment against defendant for funds deposited in new accounts 6749-2 and 6753-6; and (2) failed to grant decedent and defendant, in his individual capacity, a right of equitable subrogation against plaintiff for funds paid from source account 5508-4 due to plaintiff's default on the loan for which the account was pledged as collateral.

## II. Standing

[1] Our Supreme Court has stated:

> Pending the administration of an estate, it is well settled that title to personal property of an intestate vests in his administrator and not his next of kin. Therefore, it necessarily follows that the administrator, and not creditors or next of kin, is the proper party to bring an action to collect a debt due the estate or to recover specific personal property. *If a debt is due a decedent, it can be collected only by his administrator.*
>
> To this general rule, however, there are certain exceptions. If the administrator has refused to bring the action to collect the assets; if there is collusion between a debtor and a personal representative—particularly if the latter is insolvent; or, if some other peculiar circumstance warrants it, the creditors or next of kin may bring the action which the personal representative should have brought. However, in such a case the administrator must be a party defendant.

*Spivey v. Godfrey*, 258 N.C. 676, 677, 129 S.E.2d 253, 254 (1963) (citations omitted) (emphasis supplied).

Here, no allegations or demands in the complaint support any of the stated exceptions. "In a proper case, a personal representative may be removed for failure to prosecute or defend actions in behalf

of the estate he represents. But clearly a request to sue and a refusal would be conditions precedent." *Id.* at 679, 129 S.E.2d at 256 (citations omitted).

Plaintiff has no standing to challenge defendant's conduct prior to decedent's death. Without proper standing, the superior court acquired no jurisdiction to adjudicate plaintiff's claims. *See Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878-79, *disc. rev. denied*, 356 N.C. 610, 574 S.E.2d 474 (2002) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction. Therefore, issues pertaining to standing may be raised for the first time on appeal, including *sua sponte* by the Court." (Citations omitted)). Absence of jurisdiction can be raised at any time, including on appeal and *ex mero moto*. *Id.*

As a beneficiary of the estate, plaintiff's challenges to defendant's actions prior to decedent's death must be asserted by a demand upon the executor, or by seeking to remove the executor through petition before the clerk of superior court. *Spivey*, 258 N.C. at 677, 129 S.E.2d at 254. No allegations in the complaint and no evidence in the record shows that plaintiff did either of the conditions precedent prior to filing this action. Plaintiff has no standing and the superior court acquired no jurisdiction over this action. *Aubin*, 149 N.C. App. at 324, 560 S.E.2d at 878-79. Plaintiff, as a creditor, next of kin, or beneficiary of the estate, cannot assert a *jus tertii* claim for a debt due to the decedent without a demand upon the executor or petition before the clerk of superior court to remove the executor. *Spivey*, 258 N.C. at 677, 129 S.E.2d at 254; *see* N.C. Gen. Stat. § 28A-18-1(a) (2003) ("Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of his estate."); *see also Holmes v. Godwin*, 69 N.C. 467, 470 (1873) ("In general, *jus tertii*[,] [the right of a third party,] cannot be set up as a defense by the defendant, unless he can in some way connect himself with the third party.").

### III. Conversion Claim

[2] Even if plaintiff had standing, he cannot legally establish a claim of conversion. The signature cards for source accounts numbered 5508-4 and 5900-0 were personally signed by decedent and defendant, specifically listed both parties as owners of the accounts, and contained the following language:

We understand that by establishing a joint account under the provisions of North Carolina General Statute 53-146.1 that:

1. *The bank may pay the money* in the account *to, or on the order of, any person named* in the account unless we have agreed with the bank that withdrawals require more than one signature . . . .

(Emphasis supplied). No evidence in the record shows that decedent and defendant agreed with or required the bank to demand that withdrawals contain both owners' signatures.

When a person deposits funds into a joint account with another, the other is designated the depositor's agent with authority to withdraw the funds. *Smith v. Smith*, 255 N.C. 152, 155, 120 S.E.2d 575, 579 (1961). A principal may maintain an action in conversion to recover funds converted by their agent. *See Finance Co. v. Holder*, 235 N.C. 96, 99, 68 S.E.2d 794, 796 (1952) ("[T]he cause of action set out in plaintiff's complaint sounds in tort for conversion of funds." (Citation omitted)).

Our Supreme Court has defined the tort of conversion as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (quotation omitted).

Defendant closed the two source accounts he and decedent had individually opened and owned as joint tenants with rights of survivorship and opened the two new accounts which he and decedent again owned as joint tenants with rights of survivorship. Defendant's actions did not constitute "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Id.* As a matter of law plaintiff cannot establish that defendant's actions constituted conversion of the source account of which defendant and decedent individually opened and owned as joint tenants with rights of survivorship.

### IV.  Claim for Equitable Subrogation

[3] Defendant contends the trial court erred in failing to grant decedent and defendant, in his individual capacity, a right of equitable subrogation against plaintiff for the funds paid from source account 5508-4 due to plaintiff's default on a loan for which the account was

pledged as collateral. Defendant attempts to bring this claim for the first time on appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(c) (2007). Defendant's reliance on Rule 54(c) is misplaced. *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 286, 291, 517 S.E.2d 401, 404 (1999) (refusing to consider a claim for the first time on appeal where the party's pleadings did not allege facts sufficient to support the claim). This assignment of error is overruled.

## V. Conclusion

As a beneficiary of the estate, plaintiff's challenges to defendant's actions prior to decedent's death must be asserted by a prior demand upon the executor, or by seeking to remove the executor through petition before the clerk of superior court. *Spivey*, 258 N.C. at 677, 129 S.E.2d at 254. No allegations in the complaint and no evidence in the record shows that plaintiff did either of these conditions precedent prior to filing this action. Plaintiff has no standing and the superior court acquired no jurisdiction over this action. *Aubin*, 149 N.C. App. at 324, 560 S.E.2d at 878-79.

Plaintiff cannot establish a claim for conversion against defendant, who was a true and rightful owner of the funds, with full authority to withdraw. *Peed*, 244 N.C. at 439, 94 S.E.2d at 353. The superior court erred when it granted summary judgment in favor of plaintiff for conversion of funds deposited into the two new accounts. We reverse and remand with instruction to the trial court to enter an order dismissing plaintiff's claims.

Reversed and Remanded

Judge STROUD concurs.

Judge McCULLOUGH concurs in part and dissents in part by separate opinion.

McCULLOUGH, Judge, dissenting in part and concurring in part.

Because I find that the majority departs substantially from well-settled estate planning precedent and disregards express statutory provisions intended to prevent fraud, I respectfully dissent.

## I. Standing

First, I disagree with the majority that plaintiff lacks standing. The very case upon which the majority relies, *Spivey v. Godfrey*,

258 N.C. 676, 129 S.E.2d 253 (1963), recognizes that a beneficiary does have standing to bring an action for conversion against an administrator without making any demands on the administrator or petitioning for his removal. *Spivey* stands for the proposition that, as a general rule, during the course of an orderly administration of an estate, a beneficiary may not bring suit to collect a debt of the estate without first making a demand upon the executor or seeking to have the executor removed; however, *Spivey* emphasizes that a tort action against the administrator is not the same as an action to collect a debt. *Id.* at 677, 129 S.E.2d at 254. Our Supreme Court in *Spivey* expressly noted two examples in which beneficiaries had standing to bring tort actions against an administrator without first making a demand upon the administrator:

> In at least two cases the Court has permitted the next of kin to maintain a suit against the representative of a defaulting administrator for a distributive share in the estate by making the administrator d.b.n. of the intestate a party defendant **even though there were no allegations of collusion or refusal to bring suit.** *Hardy v. Miles, supra* and *Snipes v. Estates Administration, Inc., supra* . . . .

> . . . .

> In both *Hardy* and *Snipes*, plaintiffs were seeking to recover their distributive shares of an estate from the representative of a former administrator whom they alleged had **wrongfully converted** or failed to account for it. . . .

> **It is one situation when the next of kin sue an administrator for conversion or negligence and quite another when they attempt to take over the administrator's duty.**

*Spivey*, 258 N.C. 676, 677-78, 129 S.E.2d 253, 254-55 (emphasis added).

Thus, *Spivey* does not stand for the proposition that a beneficiary has no standing to bring an action for conversion without first petitioning the clerk of superior court for the administrator's removal. Not only does the majority misconstrue *Spivey*, but they depart from a line of cases, which hold that claims against an administrator for breach of fiduciary duty, fraud, conversion, and negligence " ' "arise *from [the]* administration of an estate, [but] their resolution is *not a part* of 'the administration, settlement and distribution of estates of decedents" ' " and cannot be brought by petition before the clerk of superior court, which has no jurisdiction over such claims. *State ex*

*rel. Pilard v. Berninger,* 154 N.C. App. 45, 53, 571 S.E.2d 836, 842 (2002) (emphasis added) (citation omitted), *disc. review denied,* 356 N.C. 694, 579 S.E.2d 100 (2003); *see also Mullinex v. Mabry,* 174 N.C. App. 839, 622 S.E.2d 523 (2005) (unpublished) ("[P]laintiffs allege constructive fraud on the part of [the administrator] with regard to her actions as personal agent for decedent prior to her death. Plaintiffs, therefore, have standing as decedent's heirs to bring the action as successors to the rights of decedent."). *In re Estate of Parrish,* 143 N.C. App. 244, 251, 547 S.E.2d 74, 78 ("We recognize that an action for damages resulting from a fiduciary's breach of duty in the administration of a decedent's estate is not a claim under the original jurisdiction of the clerk of court. Such actions should, therefore, be brought as civil actions in the trial division of Superior Court."), *disc. review denied,* 354 N.C. 69, 553 S.E.2d 201 (2001); *In re Trust Under Will of Jacobs,* 91 N.C. App. 138, 141-42, 370 S.E.2d 860, 863 (noting "our courts distinguish cases which 'arise from' the administration of an estate from those which are 'a part of' the administration and settlement of an estate"; only those matters "a part of" the administration of an estate are within exclusive original jurisdiction of the clerk of superior court), *disc. review denied,* 323 N.C. 476, 373 S.E.2d 863 (1988).

Here, plaintiff's complaint alleges claims of conversion, breach of fiduciary duties, improper payments, and constructive fraud. These claims arise from the administration of decedent's estate, but are not part of the administration of the estate and could not have been brought before the clerk of superior court. *Pilard,* 154 N.C. App. at 54, 571 S.E.2d at 842. I, therefore, disagree with the majority that plaintiff, as a real party interest, was required to file a petition before the clerk of superior court to remove defendant as a condition precedent to having standing in the superior court. Not only was this not required, but this conclusion is a substantial departure from well-settled precedent and will create confusion for estate planning practitioners throughout the state.

## II. Conversion

Next, I disagree with the majority's conclusion that the undisputed evidence of record does not establish that defendant converted the funds contained in new accounts 6749-2 and 6753-6. " 'The tort of conversion is well defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." ' " *Lake Mary Ltd. Part. v. Johnston,* 145 N.C.

App. 525, 531, 551 S.E.2d 546, 552 (citations omitted), *disc. review denied*, 354 N.C. 363, 557 S.E.2d 538 (2001). " ' "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner[.]" ' " *Id.* at 532, 551 S.E.2d at 552 (citations omitted). Thus, " 'it is clear then that two essential elements are necessary in a complaint for conversion—there must be [1] ownership in the plaintiff and [2] a wrongful conversion by defendant.' " *Id.* (citations omitted).

Because the undisputed evidence shows, as a matter of law, that (1) plaintiff is the owner of the funds held in the new accounts at issue and (2) defendant has assumed control of those funds without plaintiff's authorization, defendant has committed conversion with respect to those funds.

### A. Plaintiff's Ownership of New Accounts

First, I disagree with the majority that defendant has any valid ownership interest in the funds contained in new accounts 6749-2 and 6753-6. The majority's analysis is erroneous in that it simply glosses over the undisputed evidence of record, which is that the signature cards for the new accounts at issue did not comply with N.C. Gen. Stat. § 53-146.1 (2007), and therefore, did not create a valid right of survivorship in defendant. Without a right of survivorship, the funds contained in the new accounts at issue were part of decedent's estate and belong to plaintiff as sole beneficiary of decedent's estate.

It is well established that a right of survivorship cannot be created by the intentions of the parties without satisfaction of the statutory requirements. *See, e.g., Mutual Community Savings Bank v. Boyd*, 125 N.C. App. 118, 122, 479 S.E.2d 491, 493 (1997) (extrinsic or parol evidence of parties' intent to establish joint tenancy with right of survivorship inadmissible); *Powell v. First Union Nat. Bank*, 98 N.C. App. 227, 229, 390 S.E.2d 461, 462 (1990) (regardless of clear intent of parties to establish joint savings account with right of survivorship, survivorship account not created where statutory requirements not met). Therefore, if the statutory requirements necessary to establish a right of survivorship in new accounts 6749-2 and 6753-6 were not satisfied, it is irrelevant that decedent may have intended for defendant to have had survivorship rights in those accounts.

### Failure to Satisfy Requirements of N.C. Gen. Stat. § 53-146.1

The signature cards for new account 6749-2 and 6753-6 did not comply with N.C. Gen. Stat. § 53-146.1.

(a) Requirements of N.C. Gen. Stat. § 53-146.1

Parties who desire to establish a joint deposit account with a right of survivorship may do so pursuant to N.C. Gen. Stat. § 53-146.1. To establish this type of account under N.C. Gen. Stat. § 53-146.1, *all* persons establishing the account must (1) sign a statement that (2) uses language conspicuously indicating the intent to establish such an account, and (3) the language used must be substantially similar to the form language provided in the statute. N.C. Gen. Stat. § 53-146.1. We construe these statutory requirements strictly. *In re Estate of Heffner*, 99 N.C. App. 327, 330, 392 S.E.2d 770, 771-72 (1990).

(b) Failed Signatures under N.C. Gen. Stat. § 32A-14.1(b)

A critical error in the majority's analysis is their complete disregard of the express language of N.C. Gen. Stat. § 32A-14.1(b) (2007). Section 32A-14.1(b) prohibits an attorney-in-fact from exercising a power of attorney in favor of the attorney-in-fact, unless the power of attorney expressly authorizes the attorney-in-fact to do such things. N.C. Gen. Stat. § 32A-14.1(b) provides:

> [U]nless gifts are expressly authorized by the power of attorney, **a power [of attorney] may not be exercised by the attorney-in-fact in favor of the attorney-in-fact** or the estate, creditors, or the creditors of the estate of the attorney-in-fact.

In the instant case, the power of attorney expressly authorized defendant to engage in fifteen categories of transactions, including banking transactions and personal property transactions; it did not, however, expressly authorize defendant to make gifts of decedent's property.

As discussed below, the survivorship rights associated with the source accounts were lost at the moment that those accounts were closed. *Pilard*, 154 N.C. App. at 56, 571 S.E.2d at 844 ("In any event, even if the demand deposit account carried a 100% right of survivorship feature, any such feature became of no consequence the moment [the defendant] transferred its assets into new certificates of deposit.") By using the power of attorney to grant himself survivorship interests in the new accounts, defendant used the power of attorney in favor of himself, which is prohibited by § 32A-14.1(b); accordingly, those signatures fail.

Regardless of defendant's intentions in opening the new accounts, whether actions are authorized under a power of attorney

is a question of law, not fact. *See Hutchins v. Dowell*, 138 N.C. App. 673, 676-77, 531 S.E.2d 900, 902 (2000). In *Honeycutt v. Farmers & Merchants Bank*, 126 N.C. App. 816, 819, 487 S.E.2d 166. 168 (1997), this Court noted that the statutory language of N.C. Gen. Stat. § 32A-14.1 was intended as a codification of existing North Carolina common law. *See Honeycutt*, 126 N.C. App. at 819-20, 487 S.E.2d at 168. Under well-established principles of North Carolina agency law,

> [a]n agent is a fiduciary with respect to matters within the scope of his agency. In an agency relationship, at least in the case of an agent with the power to manage all the principal's property, it is sufficient to raise a presumption of fraud when the principal transfers property to the agent. Self dealing by the agent is prohibited.

*Id.* at 820, 487 S.E.2d at 168 (citations omitted).

The majority has disregarded the legislative protection against fraud afforded by N.C. Gen. Stat. § 32A-14.1(b). Because decedent was prohibited by statute from using the power of attorney in favor of himself and decedent never personally signed the signature cards for the new accounts, the signature cards for the new accounts only contain the valid signatures of one of the parties—not both of the parties; therefore, the signature cards do not comply with N.C. Gen. Stat. § 53-146.1. Accordingly, no valid survivorship rights were created by virtue of the signature cards associated with the new accounts.

### Survivorship Rights Do Not Transfer

Second, the undisputed evidence of record shows that defendant's survivorship rights from the source accounts did not transfer to the new accounts at issue. It is well settled that the signature card from one joint account with right of survivorship cannot be used to create survivorship rights in a new account, unless there is some evidence, either on the face of the claimed agreement or the documents setting up the account that what is being put forward as the survivorship agreement was intended to govern the particular account in question. *Napier v. High Point Bank & Trust Co.*, 100 N.C. App. 390, 393-94, 396 S.E.2d 620, 622 (1990), *disc. review denied*, 328 N.C. 92, 403 S.E.2d 99 (1991) (holding that even though money used to purchase a certificate of deposit had been withdrawn from a joint account with survivorship rights, there was no right of survivorship in the certificate of deposit because there was nothing on the face of the certificate or on the signature card of the prior account to indicate

that its provisions were intended to control the funds represented by the certificate).

Here, there is no evidence on the face of the signature cards for the source accounts or on the documents setting up the new accounts that the survivorship agreements for the source accounts were intended to govern the new accounts. Thus, the signature cards for the source accounts do not create survivorship rights in the funds contained in the new accounts. Therefore, the trial court properly concluded that defendant's survivorship rights in the source accounts were lost on 30 May 2003, when the source accounts were closed.

In sum, the majority erroneously concludes: "Defendant closed the two source -accounts he and decedent opened and owned as joint tenants with right of survivorship and opened the two new accounts which he and decedent again owned as joint tenants with right of survivorship." It is clear that because of the protections against fraud afforded by N.C. Gen. Stat. § 32A-14.1(b) and N.C. Gen. Stat. § 53-146.1, a caretaker may not use a power of attorney to make himself a joint account holder with a right of survivorship, unless the caretaker has express authority in the power of attorney to do so.

Because (1) the signature cards to the new accounts did not comply with N.C. Gen. Stat. § 53-146.1 and (2) defendant's survivorship rights from the source accounts did not transfer to the new accounts, as a matter of law, defendant had no survivorship rights in new account 6749-2 nor in new account 6753-6. Thus, when decedent died, those funds became part of decedent's estate.[1] Plaintiff, as sole beneficiary of decedent's estate is the owner of those funds.

B. Wrongful Deprivation by Defendant

As previously stated, " '[t]he essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation

---

1. As an aside, I note that there is no evidence of an *inter vivos* gift from decedent to defendant. The evidence of record shows that decedent was the depositor of all of the funds held in the source accounts and that those funds were intended to pay for decedent's expenses. Defendant has not introduced evidence of decedent's donative intent or loss of dominion and control; accordingly, decedent's estate is deemed owner of the funds which were transferred from the source accounts to the new accounts. *See Smith v. Smith*, 255 N.C. 152, 154-55, 120 S.E.2d 575, 578 (1961) (holding that a deposit by one party into an account in the names of both, standing alone, does not constitute a gift to the other; the depositor is deemed to be the owner of the funds, absent evidence of donative intent coupled with loss of dominion and control over the property).

of it to the owner[.]' " *Lake Mary Ltd. Part.*, 145 N.C. App. at 532, 551 S.E.2d at 552 (citation omitted). The majority erroneously focuses its analysis on defendant's authority to withdraw the funds from the source accounts, rather than on defendant's assumption of control over funds that he does not own.

This Court has stated that the authority of joint owners to withdraw from a joint bank account does "not release one depositor to a joint account from liability to another for withdrawal which constitutes wrongful conversion." *Myers v. Myers*, 68 N.C. App. 177, 180, 314 S.E.2d 809, 812 (1984).

The instant facts are substantially analogous to the facts of *Pilard*, 154 N.C. App. at 47-50, 571 S.E.2d at 838-40. In *Pilard*, a wife and husband were listed on a joint bank account with a right of survivorship. *Id.* While the husband was very ill in the hospital, upon a bank teller's recommendation and with no evidence of any fraudulant intent or bad faith on the part of the wife, the wife attempted to establish a new joint bank account with a right of survivorship by signing her husband's name on the signature card. *Id.* Because the husband did not sign the signature card himself, the wife's signature failed to establish a valid survivorship right in the funds held in the second bank account. Upon the husband's death, the wife, who was the administrator of the husband's estate, refused to distribute the funds held in the second account to the husband's heirs. This Court held that despite the wife's authority to withdraw the funds as a joint bank account holder on the first account, to the extent that the wife did not have a valid ownership interest in the funds held in the second account yet assumed ownership of those funds, the evidence was sufficient to support a claim of conversion against the wife.

Here, because defendant had no authority to sign decedent's name under N.C. Gen. Stat. § 32A-14.1, defendant's signatures have the same effect as the wife's failed signature in *Pilard*—they failed to create valid survivorship interests in the new accounts. Here, as the majority notes, defendant was acting as decedent's agent in withdrawing the funds from the source accounts; all of the funds deposited in the new accounts at issue, therefore, belonged to decedent, and now to plaintiff, as sole beneficiary of decedent's estate. Despite defendant's authority as a joint account holder to withdraw the funds from the source accounts, to the extent that defendant has no survivorship interest in those funds and has refused to distribute those funds to plaintiff, he is liable for conversion.

IN RE J.A.P. & I.M.P.

[189 N.C. App. 683 (2008)]

III. Equitable Subrogation

Finally, with regard to defendant's claim for equitable subrogation, I concur with the majority.